PEOPLE *v* McGUIRE

1. ROBBERY—ARMED ROBBERY—ELEMENTS.

The essential elements of armed robbery are that an assault was committed by the defendant upon the complainant, that the defendant feloniously took any property which might be the subject of larceny from the complainant or in his presence, and that the defendant was armed with a weapon described in the statute.

2. ROBBERY—ARMED ROBBERY—SPECIFIC INTENT.

Armed robbery requires specific intent.

3. CRIMINAL LAW—SPECIFIC INTENT CRIMES—EVIDENCE—ELEMENTS OF CRIME.

It is unnecessary to prove that a defendant himself committed every element of a specific intent crime, if he possessed the required specific intent or if he aided and abetted another in the perpetration of that crime knowing that the perpetrator had the required intent to commit the crime.

4. ROBBERY—ASPORTATION.

Any movement of goods, even if by the victim of an armed robbery himself at the direction of the robber constitutes asportation, despite the robber's never having reduced the goods to physical possession.

---

REFERENCES FOR POINTS IN HEADNOTES

[1] 46 Am Jur, Robbery § 5 *et seq.*
[2, 5] 46 Am Jur, Robbery § 10 *et seq.*
[3, 6] 46 Am Jur, Robbery § 25.
[4, 5] 46 Am Jur, Robbery §§ 6, 7.
[5] 46 Am Jur, Robbery §§ 6, 7, 10 *et seq.*
[7] 21 Am Jur, Criminal Law § 127.
[8–11] 46 Am Jur, Robbery § 58.
  53 Am Jur, Trial § 641.
[10, 11] 46 Am Jur, Robbery § 58.
  53 Am Jur, Trial §§ 796–802.
[12, 13] 30 Am Jur 2d, Evidence § 321 *et seq.*

5. ROBBERY — ARMED ROBBERY — SPECIFIC INTENT — DISCLAIMER — ASPORTATION.

Evidence was sufficient to prove defendant had the specific intent to commit armed robbery where the defendant, armed with a sawed-off shotgun, and his accomplice ordered the complainants, at gunpoint, to place their money on a desk, even though the defendant never reduced the money to his possession and even though his accomplice, after picking the money up returned the money to the desk and said that the money would not be taken if they could open the safe, because movement of the money by one of the robbery victims under the direction of one of the robbers constitutes asportation and because the jury could decide that the disclaimer was a sham in securing the victims' aid.

6. ROBBERY—ARMED ROBBERY—ACCESSORY—SPECIFIC INTENT—SUBSTITUTED VICTIM.

Evidence was sufficient to prove defendant aided and abetted his accomplice in an armed robbery where defendant was armed and his accomplice took the victim's car keys, even though the robbers' original plan was to rob the supermarket in which the victim was a clerk, because substitution of victims did not destroy defendant's specific intent to commit armed robbery or his knowledge that his accomplice had that specific intent.

7. ROBBERY—ACCESSORY—PRINCIPAL'S CONVICTION.

The conviction of a principal perpetrator of the crime of armed robbery is not necessary to a proper conviction of one who participated as an accessory where the accessory was charged as a principal.

8. ROBBERY—ARMED ROBBERY—SPECIFIC INTENT—INSTRUCTIONS TO JURY.

Failure of the trial court to define specific intent in its jury instructions in defendant's trial for armed robbery was not reversible error where the trial court instructed that it was necessary for the prosecution to establish that defendant committed an assault upon the complaining witness, that at the time of such assault the defendant stole from the person of such witness or in his presence, money or other property which can be the subject of larceny, that at the time of the robbery the defendant was armed with a dangerous weapon or any article used or fashioned in a manner to lead the complaining witness to reasonably believe it to be a dangerous weapon, that the property must have been taken with a

felonious intent by defendant without any claim or color of right, and that the people must prove that defendant entertained a specific intent as well as a general intent to commit armed robbery because the instructions included all the necessary elements of an armed robbery charge.

9. ROBBERY—INSTRUCTIONS TO JURY—WITHDRAWAL FROM CRIME.

Failure to instruct *sua sponte* that the defendant had withdrawn from the armed robbery charged was not error where the defense was not based on withdrawal but on the theory that defendant did not take anything from the complainant and that the defendant's mental faculties were too impaired by alcohol and narcotics for him to have formed the requisite specific intent to commit armed robbery and where the evidence of withdrawal was, at best, very slight.

10. ROBBERY—ARMED ROBBERY—LESSER OFFENSES—INSTRUCTIONS TO JURY.

Listing but not defining in the instructions to the jury in defendant's armed robbery trial the lesser offenses included in the offenses of armed robbery and assault with intent to rob while armed did not weigh the court's charge against the defendant by overemphasizing the greater offenses where the only repetition of the instructions regarding the greater offenses occurred while the jury requested reinstruction regarding their definitions and defendant made no request to have the lesser offenses defined.

11. ROBBERY—ARMED ROBBERY—LESSER OFFENSES—INSTRUCTIONS TO JURY—AFFIRMATIVE EXCLUSION.

Failure to instruct *sua sponte* that unarmed robbery was a lesser included offense of the armed robbery charged did not constitute an affirmative exclusion of unarmed robbery as a possible verdict where the trial court instructed the jury that if they found defendant guilty, they could return a verdict on the armed robbery charge or any one of four lesser included offenses, although unarmed robbery was not one of the enumerated lesser offenses.

12. CRIMINAL LAW—DEFENDANT'S CONVICTIONS—ADMISSIBILITY—RES GESTAE.

Allowing testimony regarding defendant's prison record was not error, even though the testimony was not introduced to impeach the defendant's credibility as a witness, where the testimony was elicited on defense counsel's cross-examination of the complainant, the testimony was that the defendant, in the

course of an armed robbery, told the complainant that he had spent four years in prison and that the complainant did not know whether defendant's remarks about the imprisonment were true, defense counsel did not attempt to cure any prejudicial effect of the testimony either through rebuttal or through a request for a limiting instruction, and the complainant was testifying as to what the defendant had said, not the truth of the statements.

13. Criminal Law—Witnesses—Defendant's Convictions.
   The prosecutor and judge did not have a duty to show that an armed robbery complainant's testimony that the defendant had remarked to the complainant that he had spent four years in prison was false where there was no showing that the prosecutor and judge knew that defendant had not been in prison, or even that defense counsel knew that defendant had not been in prison, and no evidence was introduced to conflict with the complainant's unequivocal statements that he was testifying to what defendant had said, not to the truth of defendant's remarks.

Appeal from Washtenaw, Ross W. Campbell, J. Submitted Division 2 December 8, 1971, at Lansing. (Docket No. 11001.) Decided March 22, 1972. Leave to appeal denied, 387 Mich 810.

Walter Lee McGuire was convicted of armed robbery. Defendant appeals. Affirmed.

*Frank J. Kelley,* Attorney General, *Robert A. Derengoski,* Solicitor General, *William F. Delhey,* Prosecuting Attorney, and *Lynwood E. Noah,* Assistant Prosecuting Attorney, for the people.

*Arthur J. Tarnow,* State Appellate Defender, for the defendant.

Before: McGregor, P. J., and Bronson and Targonski,* JJ.

_____

* Former circuit judge, sitting on the Court of Appeals by assignment pursuant to Const 1963, art 6, § 23 as amended in 1968.

TARGONSKI, J. On October 16, 1970, defendant, Walter Lee McGuire, was convicted by a jury of armed robbery. MCLA 750.529; MSA 28.797. He was sentenced to a term of 5–1/2 to 15 years in prison. An application for leave to file a delayed motion for a new trial was denied by the trial court.

About 11:20 p.m. on July 11, 1970, defendant and a friend called Duane, both wearing hoods over their heads and carrying sawed-off shotguns, forced their way into Val's Market as two employees, James Howard and Robert Bowman, were starting to leave after cleaning up the store for the night. Bowman testified that Duane ordered Howard to open the office safe and they replied that they did not know the combination to it. Defendant then demonstrated that his gun was loaded by breaking it and showing them a shell. Duane asked both Howard and Bowman for their money and took Bowman's billfold and two 20-dollar bills from Howard. Bowman further testified that Duane put the money on a desk in the office and said that they wouldn't take it if they could get into the safe. Howard then called the manager, Mr. Moses, at his home and asked him to bring his store keys out because they had locked the other set of keys in the office. For various reasons Moses became suspicious and contacted the State Police.

Meanwhile, Duane took Howard's car keys, saying that they were going to use his car to leave, and after obtaining the keys he went outside to wait in Howard's car until the manager arrived. After Moses and the State Police arrived, defendant put his gun in the side of Bowman's neck and threatened to use the gun if Moses and the police didn't leave. After a few minutes, it became apparent to defendant that he couldn't escape and he surrendered. Duane was never apprehended.

Defendant now appeals from the verdict and judgment of conviction. Six questions are raised for review.

I. *Was there sufficient evidence to support a finding of guilty beyond a reasonable doubt?*

During the trial, defendant conceded that he was present in Val's Market on the evening of July 11, 1970, and that he was in possession of a sawed-off shotgun when he entered with another individual. However, defendant argues that there is no testimony from which it might reasonably be inferred that he possessed specific intent to take 40 dollars from James Howard. Similarly, defendant argues that there is no testimony from which it may be reasonably inferred that he even knew of the taking of one set of car keys by Duane. In other words, defendant claims that there is no evidence that he possessed the specific intent essential to constitute the crime of armed robbery. We disagree.

Armed robbery is a statutory offense. MCLA 750.529; MSA 28.797. Under the statute, the essential elements of armed robbery are: (1) that an assault was committed by defendant upon the complainant, (2) that the defendant feloniously took any property which might be the subject of larceny, from the complainant or in his presence, and (3) that the defendant was armed with a weapon described in the statute. *People* v *Needham,* 8 Mich App 679 (1967). Because larceny is a specific intent crime, armed robbery also requires specific intent, as defendant contends. *People* v *Royce Alexander,* 17 Mich App 30 (1969); *People* v *Kelley,* 21 Mich App 612 (1970); *People* v *Ramsey,* 23 Mich App 11 (1970); *People* v *Stoner,* 23 Mich App 598 (1970). However, MCLA 767.39; MSA 28.979[1] makes is un-

---

[1] MCLA 767.39; MSA 28.979 states as follows: "Every person

necessary to prove that defendant himself committed every element of a specific intent crime, provided he possessed the required specific intent or if he aided and abetted another in the perpetration of that crime knowing that the perpetrator had the required intent to commit the crime. *People v Poplar,* 20 Mich App 132 (1969); *People v Clark,* 34 Mich App 70 (1971).

Returning to the instant case, while the evidence of an assault made with a dangerous weapon is overwhelming, evidence going to defendant's specific intent to rob James Howard is not. Nevertheless, we find that the testimony that the victim's money was placed on the desk at gunpoint, even though there was a disclaimer of any intent to take it if the money in the safe could be taken instead, and alternatively, the testimony that the car keys were taken, was sufficient to sustain the conviction of armed robbery.

Notwithstanding the alleged disclaimer that the victim's money would not be taken if the two robbers could get into the safe, there was sufficient testimony elicited from which the jury could ascertain beyond a reasonable doubt that defendant possessed the requisite specific (felonious) intent to rob James Howard of 40 dollars. The mere fact that the robbers ordered Howard to place his money on the desk was enough to present a question of fact to the jury. Any movement of goods, even if by the victim under the direction of defendant, armed with a dangerous weapon, constitutes asportation despite defendant never reducing the money to physical possession. *People v Royce Alexander, supra; People v John W.*

---

concerned in the commission of an offense, whether he directly commits the act constituting the offense or procures, counsels, aids, or abets in its commission may hereafter be prosecuted, indicted, tried and on conviction shall be punished as if he had directly committed such offense."

*Ragland,* 34 Mich App 624 (1971). Therefore, when Howard was directed to place his money on the desk, even though Duane picked it up but returned it to the desk, the specific intent of defendant became an issue. The jury was given a choice of whether to believe defendant's alleged disclaimer, or whether on the contrary, to believe that the alleged disclaimer was merely a sham in the hope of securing the victim's cooperation in order to get to the safe.

In the alternative, there was also sufficient evidence from which the jury could determine beyond a reasonable doubt that defendant aided and abetted his partner, Duane, in the perpetration of an armed robbery. Whether a crime committed is fairly within the scope of a common unlawful enterprise is a question of fact for the jury. *People* v *Poplar, supra.* When Duane took the victim's car keys under the present circumstances, there was enough evidence to clearly establish an armed robbery on the part of Duane. See, MCLA 750.529; MSA 28.797. From the evidence presented that defendant and Duane intended an armed robbery of Val's Market, it is obvious that defendant possessed the knowledge that his confederate had the specific intent to rob, a specific intent which he in turn possessed. A mere substitution of victims did not destroy this intent, or knowledge that the other possessed it. Thus, it is immaterial under MCLA 767.39; MSA 28.979, which robber actually took physical possession of the victim's goods. Therefore, when Duane took possession of the keys, defendant was as guilty of armed robbery under MCLA 767.39; MSA 28.979, as Duane. Furthermore, the conviction of a principal perpetrator of the crime of armed robbery is not necessary to a proper conviction of one who participated as an accessory where he was charged as a principal. *People* v *Miniear,* 8 Mich App 591 (1967).

II. *Did the trial court err in its instructions on specific intent?*

Defendant argues that the court erred in failing to define "specific intent", in failing to apply the requirement for specific intent to the facts of the case, in intimating that in the instant case drunkenness was the only testimony which could negate a finding of specific intent, and in instructing that the defendant must be so drunk that he didn't know what he was doing to negate specific intent.

Although it is apparent that the court gave the defendant's requested charges on specific intent and that defendant had no objection to the instructions given, nevertheless, where an erroneous or misleading instruction is given as opposed to one which merely omits a pertinent but not essential point, an appellate court will reverse even though no objection was made to the instruction. *People v Miller,* 35 Mich App 627 (1971); *People v Turner,* 31 Mich App 44 (1971); *People v Kelley, supra.* However, after a careful reading of the instructions with the aforementioned specific objections in mind, we find that they do satisfy the requirements of *People v Turner, supra,* as to instructions on armed robbery and, *People v Kelley, supra,* on intoxication as a defense to specific intent.

In *People v Turner, supra,* this Court held that charging the jury that to find the defendant guilty of armed robbery they must find beyond a reasonable doubt that the defendant assaulted the complainant and, while armed with a knife, did rob, take, and steal from the complainant's presence $47, was not reversible error even though the specific intent necessary in a robbery armed was not detailed and denied, because as used in the instruction the word "rob" indicated a felonious and larcenous intent and no

reasonable man could construe the word "rob" to mean a taking without felonious or larcenous intent.

In the present case the trial court did instruct that it was necessary for the prosecution to establish that defendant committed an assault upon the complaining witness, that at the time of such assault he stole from the person of such witness or in his presence, money or other property which may be the subject of larceny, and that at the time of such robbery defendant was armed with a dangerous weapon or any article used or fashioned in a manner to lead the complaining witness to reasonably believe it to be a dangerous weapon. Further, the trial court instructed that the property must have been taken with a felonious intent by defendant without any claim or color of right in order to constitute a robbery. Finally, further into the instruction, the court again commented that the people must prove that defendant entertained a specific intent as well as a general intent to commit armed robbery. Thus, we find that the jury instructions in this case included all the necessary elements of an armed robbery charge. See *People* v *Turner, supra.*[2]

Further, in *People* v *Kelley, supra,* we found that there was no instructional error where the trial judge charged that if defendant's mental faculties were so far overcome by intoxication that he was not conscious of what he was doing, or he did not know

---

[2] Defendant, in his brief, relies upon the case of *People* v *McKeighan*, 205 Mich 367 (1919). But this reliance is, at most, weak since the *McKeighan* Court stated that it would not be inclined to set aside the conviction if the only error in the case was the possibility that the jury was misled by an insufficient instruction on the necessary intent. Further, the error complained of and sustained in *McKeighan* was that the instruction should have clearly stated that it was necessary that the defendant had a criminal intent to rob, steal or take from the person of the victim property that could have been the subject of larceny because an attempt to commit a simple assault would not justify a conviction for assault and unarmed robbery. As readily seen, the instruction in the present case supplies this deficiency complained of in the *McKeighan* case.

what he was doing, then he could not entertain the requisite specific intent and, therefore, could not have committed robbery.

A comparison of the instructional charge given in this case to that which was acceptable in *Kelley* produces no deficiency or error. The court, in the instant case, sufficiently instructed the jury, in part, as follows:

"Since armed robbery is a crime of specific intent, if the defendant's mental facilities [*sic*] is so far overcome by intoxication or narcotic influence that he did not know what he was doing, that he could not entertain, and he could not entertain that specific intent, and without this intent this crime could not have been committed."

III. *Did the trial court err in not instructing on the defense of withdrawal?*

Defendant argues that there was testimony supporting the position that he withdrew from the crime of armed robbery of James Howard before any taking was committed and that it was error for the judge not to instruct on a possible withdrawal even though there was no request for such an instruction.

Again, we find defendant's argument unpersuasive. The defense that was presented was not based on a theory of withdrawal, but rather on the theory that defendant did not take anything from James Howard and further that he could not have formed the specific intent to commit armed robbery because of impaired mental faculties due to alcohol and narcotics consumption. It is well established that, in the absence of an otherwise essential objection or request for instruction, we correct only miscarriages of justice, such as where an erroneous or misleading instruction is given. *People v Miller, supra; People v Ely,* 35 Mich App 390 (1971); *People v Turner, su-*

*pra; People* v *McClure,* 29 Mich App 361 (1971). In order to test instructions they must be read in their entirety. *People* v *Miller, supra; People* v *Lem Dumas,* 25 Mich App 173 (1970). And where court instructions adequately state the law and the theories of the parties, they cannot be said to be improper. *People* v *McClure, supra; Shirley* v *The Drackett Products Co,* 26 Mich App 644 (1970). Upon inspection of the record, we find that any evidence of withdrawal is very slight, at best. Therefore, the instruction exhibited a fair statement of the law and the theories of the parties and, consequently, there was no miscarriage of justice by the absence of a *sua sponte* instruction on withdrawal.

IV. *Did the trial court err in its instructions by over-emphasizing the greater offenses?*

Defendant contends that the court erred in its instructions by over-emphasizing the greater offenses of armed robbery and assault with intent to rob while armed. The lesser offenses of attempt to commit robbery while armed, larceny from a person, and assault and battery were listed but not defined and defendant argues that this weighted the charge against him, citing *People* v *Reece,* 9 Mich App 108 (1967).

While this Court did reverse in *Reece* on the basis that armed robbery was over-emphasized and insufficient or confusing instructions given on lesser included offenses, those instructions are not comparable to the present instructions. In *Reece,* the sheer volume of instruction by the court regarding armed robbery effectively precluded the jury from serious consideration of the included offenses. Furthermore, in *Reece,* when the jury asked to be instructed regarding the included offenses, they were given, in addition, a thorough reinstruction of armed

robbery and its elements. This is not the situation here.

In the present case, there is no constant repetition of instructions of armed robbery and assault with intent to rob while being armed. The only repetition that does occur is created by a jury request for reinstruction as to the definition of armed robbery and assault with intent to rob while armed.

Furthermore, in *People* v *Manchester,* 235 Mich 594 (1926), our Supreme Court held that where the court instructed the jury that the greater offense included various lesser crimes, failure to define the lesser included offenses was not reversible error, in the absence of a request therefor. Similarly, in the instant case, although the court merely listed the included offenses, there was no request submitted for definition of those included offenses. Consequently, we are unable to find that the court in its instructions over-emphasized armed robbery and assault with intent to rob while armed merely because the lesser included offenses were listed but not defined.

V. *Did the trial court err by failing to instruct on the offenses of unarmed robbery?*

The jury was charged in part, as follows:

"There are six possible verdicts which you could render in this case, six possible verdicts. You may find the defendant guilty of robbery while armed; you may find the defendant guilty of assault with intent to rob while armed; you may find the defendant guilty of attempt to commit robbery while armed; you may find the defendant guilty of larceny from a person; you may find the defendant guilty of assault and battery; or you may find the defendant not guilty."

Defendant contends that it was reversible error for the trial court to fail to include unarmed robbery

as a lesser included offense.[3]  Further, defendant claims that the trial court's failure to instruct on unarmed robbery constituted, in effect, an affirmative exclusion of included offense, and as such, the case of *People* v *Lemmons,* 384 Mich 1 (1970), mandates reversal.  We disagree.

In *People* v *Lemmons, supra,* 3, the Supreme Court said, "that in the absence of a request to charge, the court does not err in failing to instruct upon the included offenses".  *People* v *Bruce,* 35 Mich App 358 (1971), *People* v *Stevens,* 9 Mich App 531 (1968). In the instant case, no request was made to charge on unarmed robbery.[4]  Further, the failure to instruct on unarmed robbery cannot be construed as an affirmative exclusion of an included offense in violation of *Lemmons.*  The court in *Lemmons* affirmatively excluded lesser offenses by stating in its instructions: "There are no included offenses".  Here, the trial court stated in its instructions:

"If you find the defendant guilty of any one of the five offenses, that with which he is charged and four lesser included offenses, your foreman should announce a verdict of guilty of, and then name the particular offense of which you find the respondent guilty."

Thus, we find no evidence that the trial court affirmatively excluded unarmed robbery from the consideration of the jury in contravention of the rule established in *People* v *Lemmons, supra.*  See *Peo-*

---

[3] It is interesting to note that defendant submitted a written request to charge on the four lesser included offenses of:  attempt to commit robbery while armed; assault with intent to rob while armed; larceny from a person; and assault and battery; but his request to charge did not include unarmed robbery.

[4] Even if a request would have been made, the trial court would not have been required to instruct on the offense of unarmed robbery since no evidence was presented to support an instruction on this lesser included offense.  See, *People* v *Lemmons, supra; People* v *Wilkie,* 36 Mich App 607 (1971); *People* v *Wansley,* 35 Mich App 196 (1971); *People* v *Membrès,* 34 Mich App 224 (1971).

*ple* v *Goldfarb,* 37 Mich App 57 (1971); *People* v *Wilkie,* 36 Mich App 607 (1971); *People* v *Maxwell,* 36 Mich App 127 (1971).

VI. *Did the prosecutor and judge commit error in failing to show that defendant had not been in prison despite testimony to the contrary?*

Defendant's final argument is that reversible error occurred when Robert Bowman, during cross-examination by defense counsel, said that defendant told him that he had spent four years in Jackson Prison and that he wasn't going back.

The colloquy in question was as follows:

"*Q.* Did you have any conversation with Mr. McGuire prior to these people coming into the store, prior to Mr. Moses arriving?

"*A.* Yes.

"*Q.* What was the crux of that conversation, sir?

"*A.* Mr. McGuire told me he had spent four years in Jackson Prison and that he wasn't going back.

"*Q.* Mr. McGuire told you that?

"*A.* Right.

"*Q.* You don't know whether or not that is true?

"*A.* No sir, I don't.

"*Q.* But you weren't interested in finding out, were you?

"*A.* Not really, no."

\*   \*   \*

"*Q.* Did you have any conversation with him other than relating to opening the safe?

"*A.* No, not other than what I said about him telling me about Jackson."

Upon examination of the aforementioned testimony, we find that defendant's argument is without merit. First, defendant contends that this testimony of a prior conviction was inadmissible. While it is true that evidence of prior criminal convictions

is generally inadmissible unless introduced to impeach the credibility of a defendant who has already taken the stand, or is introduced in connection with a recidivist statute, the facts of this case require a different result. To begin with, it is significant to note that *defense* counsel conducted the cross-examination which brought out the testimony of the alleged prior conviction. This was not a case of the prosecution pressing for prejudicial statements, as in *United States* v *Smith*, 403 F2d 74 (CA 6, 1968); nor was this a situation similar to that in *People* v *Camel*, 11 Mich App 219 (1968), a case upon which defendant here places a strong reliance. In *Camel*, the prosecutor elicited the reference to Jackson Prison from a police officer on direct examination. Defense counsel immediately asked for a mistrial. This Court found reversible error in denying the mistrial because the objectionable response could have been anticipated by the prosecutor since substantially the same response had been given at a *Walker* hearing. On the contrary, the present case is analogous to *People* v *Oscar Lee Smith*, 22 Mich App 133 (1970), where the defendant's own witness made an unresponsive remark on direct examination.

Additionally, the cross-examination here by defense counsel elicited the fact that the witness, Robert Bowman, didn't know whether defendant's statement concerning the alleged prior imprisonment was true. The witness's reply was merely responsive to defense counsel's own question concerning the context of the witness's conversation with the defendant at the time of the robbery. In other words, he was only testifying as to what defendant had said, not to the truth of defendant's remarks. Furthermore, defense counsel made no attempt to cure any prejudicial effect that this testimony may have had against defendant, either

through rebuttal testimony or through a request for a limiting instruction to be given to the jury.[5] Therefore, under these circumstances, defendant created the issue and now must live with it.

Defendant's second contention is that this afore-mentioned testimony is untrue. He contends that because the prosecutor and judge *probably* had defendant's record showing that defendant had not spent time in prison, that they had a duty to show that the testimony of Robert Bowman was false. But this is mere supposition, as defendant's own use of the word "probably" denotes. Assuming *arguendo,* that the judge and prosecutor had this duty in this situation, there is no evidence that the judge or prosecutor knew that defendant had not spent time in Jackson Prison. Presumably, defense counsel didn't know it either since he did not question defendant about it when he took the stand, or attempt to rebut it in any other manner. Additionally, there was no evidence conflicting with Robert Bowman's statement that defendant had spent four years in Jackson Prison. Finally, as previously mentioned, it was unequivocal that the witness, Robert Bowman, was merely testifying as to what defendant said, not to the truth of defendant's remarks. Thus, we find no error.

Affirmed.

All concurred.

---

[5] Nor did defense counsel move for a mistrial at the time.