# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

        Plaintiff-Appellee,

v

MARK WILLIAM VOLKE,

        Defendant-Appellant.

UNPUBLISHED
February 23, 2017

No. 329263
Macomb Circuit Court
LC No. 2015-000764-FC

Before: JANSEN, P.J., and BECKERING and GADOLA, JJ.

PER CURIAM.

Defendant appeals as of right his jury-trial conviction of armed robbery, MCL 750.529, for which the trial court sentenced him to 160 to 360 months' imprisonment. We affirm.

## I. FACTS

This case arises from an armed robbery that took place at a Speedy Q convenience store. Evidence produced at trial showed that, on the day of the robbery, defendant approached the cash register with several food and beverage items and asked the cashier, Amber Temple, for two cartons of cigarettes. Temple obtained the cigarettes and began ringing up defendant's items when he demanded all of the money in the cash register, which Temple gave him. Temple testified that she never saw a gun, but defendant told her that he had a gun while he reached in between his jackets, which confirmed her belief that he had a gun. At trial, defendant disputed that he had a gun or that he represented to Temple that he had a gun.

## II. JURY INSTRUCTIONS

On appeal, defendant first argues that the trial court erred by refusing to instruct the jury on specific intent as it relates to whether he represented that he possessed a dangerous weapon. We review a defendant's claim of instructional error de novo. *People v Fennell*, 260 Mich App 261, 264; 677 NW2d 66 (2004). When reviewing a claim of instructional error, we review the trial court's instructions as a whole to determine whether error requiring reversal occurred. *People v Aldrich*, 246 Mich App 101, 124; 631 NW2d 67 (2001). Jury instructions must include "all the elements of the charged offenses and any material issues, defenses, and theories that are supported by the evidence." *Fennell*, 260 Mich App at 265. "Even if the instructions are somewhat imperfect, reversal is not required if the instructions fairly presented the issues to be tried and were sufficient to protect the rights of the defendant." *Id.*

-1-

"The essential elements of an armed robbery are (1) an assault, and (2) a felonious taking of property from the victim's person or presence, while (3) the defendant is armed with a weapon" as described in MCL 750.529.[1] *People v Allen*, 201 Mich App 98, 100; 505 NW2d 869 (1993). The second element of armed robbery describes larceny, which is a specific intent crime. See *People v McGuire*, 39 Mich App 308, 313; 197 NW2d 469 (1972). As a result of the larceny element, armed robbery is "a specific intent crime, and the prosecutor must establish that the defendant intended to permanently deprive the owner of property." *People v Lee*, 243 Mich App 163, 168; 622 NW2d 71 (2000). In other words, the specific intent requirement of armed robbery must be proven in the context of permanently depriving the owner of property, not in the context of a defendant's use of a dangerous weapon.

Defendant argues that the trial court erred by refusing to instruct the jury on specific intent as it relates to whether he represented that he was in possession of a dangerous weapon. Specifically, defendant asked the trial court to instruct the jury as follows:

> (5)    Fourth, that while in the course of committing the larceny the defendant (d) *specifically intended to and did* represent orally or otherwise that he was in possession of a *dangerous* weapon.

The trial court's armed robbery instruction included the word "dangerous," but did not include the phrase "specifically intended to and did." Defendant's proposed instruction would have added the requirement of specific intent regarding whether he represented that he possessed a dangerous weapon, which is not required by MCL 750.529. Again, the requirement of specific intent under the armed robbery statute pertains to a defendant's intent to permanently deprive the owner of property, *Lee*, 243 Mich App at 168; it does not require a defendant to specifically intend to represent, orally or otherwise, that he possessed a dangerous weapon during the offense. Offering defendant's proposed instruction to the jury would have been akin to requiring the prosecutor to prove an extra element in order to obtain an armed robbery conviction. Accordingly, the trial court did not err by refusing to provide the proposed instruction.

## III.  CUSTODIAL INTERROGATION

Defendant next argues that the trial court improperly admitted statements he made while he was subjected to custodial interrogation after invoking his right to remain silent in violation of *Miranda v Arizona*, 384 US 436; 86 S Ct 1602; 16 L Ed 2d 694 (1966). We review de novo questions involving whether a defendant was subjected to interrogation by express questioning or its functional equivalent. *People v White*, 493 Mich 187, 193; 828 NW2d 329 (2013).

"The Fifth Amendment of the United States Constitution provides that '[n]o person shall . . . be compelled in any criminal case to be a witness against himself . . . .' " *White*, 493 Mich at

---

[1] The third element of armed robbery is satisfied if a defendant (1) "possesses a dangerous weapon," (2) possesses "an article used or fashioned in a manner to lead any person present to reasonably believe the article is a dangerous weapon," or (3) "represents orally or otherwise that he or she is in possession of a dangerous weapon[.]" MCL 750.529.

193, quoting US Const, Am V.  See also Const 1963, art 1, § 17.  "In [*Miranda*, 384 US 436], the United States Supreme Court created a set of prophylactic safeguards to insure protection of the Fifth Amendment right to be free from compelled self-incrimination during custodial interrogation." *People v Cheatham*, 453 Mich 1, 10; 551 NW2d 355 (1996) (opinion by BOYLE, J.).  In the context of custodial interrogation, advising a defendant of his or her *Miranda* rights[2] "is necessary to protect his constitutional privilege against self-incrimination, and '[i]f the individual indicates in any manner, at any time prior to or during questioning, that he wishes to remain silent, the interrogation must cease.' " *White*, 493 Mich at 194, quoting *Miranda*, 384 US at 473-474 (alteration in *White*).  The term "interrogation" refers to both express questioning and its functional equivalent, which includes "any words or actions on the part of the police (other than those normally attendant to arrest and custody) that the police should know are reasonably likely to elicit an incriminating response from the suspect."  *Rhode Island v Innis*, 446 US 291, 301; 100 S Ct 1682; 64 L Ed 2d 297 (1980).  "If the police continue to 'interrogate' the defendant after he has invoked his right to remain silent, and the defendant confesses as a result of that 'interrogation,' the confession is inadmissible." *White*, 493 Mich at 194.

The issue in this case is whether defendant was "interrogated" within the meaning of *Miranda* after he invoked his right to remain silent.  Following the robbery, the Clinton Township police apprehended defendant and took him into custody.  Detective Gilbert and Lieutenant Reincke met with defendant for questioning.  Gilbert advised defendant of his *Miranda* rights both orally and in writing.  Defendant refused to sign a waiver of his rights, and Gilbert asked defendant if he was willing to discuss his case.  At this point, defendant said that he did not want to talk to the officers.  Questioning immediately ceased and Reincke left the room.  As defendant was standing to leave, Gilbert asked defendant if he knew what he was being charged with, and began to advise defendant that he was being charged with armed robbery.  Defendant responded with several questions and finally volunteered the following:

> *Defendant*.  Right, um how is it, how is it armed robbery if there was no weapon?
>
> *Gilbert*.  Do you want [to] let me?
>
> *Defendant*.  There was no weapon, there was no weapon even brandished[.]
>
> *Gilbert*.  Do you want me to sit down and talk to you about it and tell you why and everything?  Do you want to talk about it?  I can sit down and explain everything to you and we can talk about it if you want to.
>
> *Defendant*.  I mean it[']s not going to change the results so

---

[2] Pursuant to *Miranda*, 384 US at 444, "[p]rior to any questioning, the person must be warned that he has a right to remain silent, that any statement he does make may be used as evidence against him, and that he has a right to the presence of an attorney, either retained or appointed."

*Gilbert.* Well I mean you are asking me questions, I can answer your questions if you want to sit down and talk[.]

*Defendant.* Na[.]

*Gilbert.* Ok[.]

*Defendant.* It[']s not going to change the results or what the charges was[.]

A video of this exchange was played for the jury at trial. Defendant argues that his statements were improperly admitted because they were the result of continued custodial interrogation after he invoked his right to remain silent. However, merely advising a defendant of the crime for which he is charged is not considered interrogation or its functional equivalent. See *People v McCuaig*, 126 Mich App 754, 760; 338 NW2d 4 (1983). The record is devoid of any evidence showing that Gilbert or Reincke should have known that simply advising defendant of the charges against him was reasonably likely to invoke an incriminating response from defendant. See *White*, 493 Mich at 195. The officer's statements were meant to provide information, rather than elicit a response. Therefore, defendant was not "interrogated" within the meaning of *Miranda*, and no constitutional violation occurred.

Moreover, even assuming that the trial court erroneously admitted the statements because defendant was improperly subjected to continuing interrogation, any error was harmless. See *People v Whitehead*, 238 Mich App 1, 7; 604 NW2d 737 (1999) (explaining that the erroneous admission of a confession is a nonstructural, constitutional defect that is subject to harmless-error analysis). The statements defendant made during this exchange with the police were exculpatory rather than incriminating and were duplicative of his testimony at trial. At trial, there was a dispute regarding whether defendant orally or otherwise represented that he had a gun, which defendant explicitly denied in the statements he made on the video that was played for the jury. Under the circumstances, any erroneous admission of the statements was harmless beyond a reasonable doubt.

IV. ANONYMOUS JURY

Finally, defendant argues that the trial court's use of numbers to identify jurors violated his due process rights. At trial, defendant did not object to the trial court's use of numbers instead of names to refer to jurors. Therefore, this issue is unpreserved and our review is limited to an analysis of whether plain error occurred. *People v Hanks*, 276 Mich App 91, 92; 740 NW2d 530 (2007). "To avoid forfeiture under the plain error rule, three requirements must be met: 1) error must have occurred, 2) the error was plain, i.e., clear or obvious, 3) and the plain error affected substantial rights." *People v Carines*, 460 Mich 750, 763; 597 NW2d 130 (1999). Even if these requirements are met, "[r]eversal is warranted only when the plain, forfeited error resulted in the conviction of an actually innocent defendant or when an error seriously affected the fairness, integrity or public reputation of judicial proceedings independent of the defendant's innocence." *Id.* at 763-764 (quotation marks and citation omitted).

A trial court's practice of referring to jurors by numbers instead of names potentially involves the use of an "anonymous jury," which this Court has defined as "one in which certain

information is withheld from the parties, presumably for the safety of the jurors or to prevent harassment by the public." *People v Williams*, 241 Mich App 519, 522; 616 NW2d 710 (2000). The use of an anonymous jury impinges two interests: "(1) the defendant's interest in being able to conduct a meaningful examination of the jury and (2) the defendant's interest in maintaining the presumption of innocence." *Id*. An anonymous jury is "something more than just the jurors' names [being] withheld from the parties" and is only truly implicated if certain biographical information is also withheld. *People v Hanks*, 276 Mich App 91, 93; 740 NW2d 530 (2007). Ultimately, "[a] challenge to an 'anonymous jury' will only succeed where the record reflects that withholding information precluded meaningful voir dire or that the defendant's presumption of innocence was compromised." *Id.*

Defendant cannot show that the trial court's use of numbers to identify jurors in this case constituted plain error. The record reflects that the trial court advised the jurors that they would be referred to by number rather than name and explained that this was the trial court's practice in every civil and criminal case. Further, the trial court advised the jurors before voire dire and again after closing arguments that they must begin with the presumption that defendant is innocent. During voir dire, the jurors shared biographical information in open court, which included their marital status, education level, employment status, and spouses' employment status. The record does not show that any evidence was withheld from the parties or that the trial court's practice compromised the presumption of defendant's innocence or precluded meaningful voir dire.[3]

Defendant argues that the trial court should have given the cautionary instruction provided in dicta in *Hanks*, 276 Mich App at 93, advising jurors that "any use of numbers in lieu of jurors' names is simply for logistical purposes and they should not in any way consider it a negative against the defendant." Obiter dicta lacks the force of an adjudication and is nonbinding. See *People v Peltola*, 489 Mich 174, 190 n 32; 803 NW2d 140 (2011). The proposed cautionary instruction in *Hanks* merely reaffirms the principle that a defendant's interests are not compromised by using numbers instead of jurors' names if the parties are able to conduct meaningful voir dire and the defendant is able to maintain the presumption of innocence. In this case, it was unnecessary for the court to give an additional cautionary instruction. The trial judge clearly explained that he used numbers instead of jurors' names in every case, regardless of whether the case was civil or criminal. The jurors could reasonably infer from this information that the trial court used numbers for nothing more than logistical purposes. In addition, the trial court clearly instructed the jurors on two occasions that they must presume

---

[3] Although defendant cannot establish that the trial court's use of numbers rather than jurors' names amounted to plain error requiring reversal, we caution the trial court regarding its routine use of this practice, considering the significant interests of defendants that could be at stake. See *Williams*, 241 Mich App at 522.

defendant's innocence. These statements fulfilled the purpose of the cautionary instruction proposed in *Hanks*. Defendant has not demonstrated plain error requiring reversal.

Affirmed.

/s/ Kathleen Jansen
/s/ Jane M. Beckering
/s/ Michael F. Gadola