## PEOPLE v. POPLAR

1. CRIMINAL LAW—MOTIONS—VENUE—CHANGE OF—PRE-TRIAL PUBLICITY—VOIR DIRE JURY EXAMINATION.

Denial of defendant's motion for a change of venue on the ground that pre-trial publicity would prevent him from having a fair and impartial trial was not error where the court, before denying that motion, conducted a *voir dire* examination of the jury to determine whether they had been influenced by any pre-trial publicity.

---

REFERENCES FOR POINTS IN HEADNOTES

[1] 21 Am Jur 2d, Criminal Law § 426.
56 Am Jur, Venue §§ 56, 66, 67.
Pretrial publicity in criminal case as affecting defendant's right to fair trial—federal cases. 10 L Ed 2d 1243.
[2] 21 Am Jur 2d, Criminal Law § 122.
[3, 4, 5, 7] 21 Am Jur 2d, Criminal Law § 123.
[5, 7] 21 Am Jur 2d, Criminal Law § 82.
[6] 21 Am Jur 2d, Criminal Law § 1 *et seq.*

2. CRIMINAL LAW—MOTIONS—DIRECTED VERDICT—AIDING AND ABET-
TING—BREAKING AND ENTERING—ACTING AS LOOKOUT.

> Denial of defendant's motion for a directed verdict on the issue
> of whether he aided and abetted a breaking and entering by
> acting as a lookout was not error where a co-defendant
> testified that defendant acted as lookout and the circumstances
> leading up to that offense constituted sufficient evidence which,
> if believed by the jury, would support defendant's conviction
> on that count.

3. CRIMINAL LAW—SPECIFIC INTENT CRIMES—AIDING AND ABETTING.

> One accused of aiding and abetting a specific intent crime cannot
> be held as a principal unless he himself possessed the required
> specific intent or unless he aided and abetted another in the
> perpetration of that crime knowing that the perpetrator had
> the required intent.

4. CRIMINAL LAW—AIDING AND ABETTING—INTENT PRESUMED—
KNOWLEDGE OF WRONGFUL PURPOSE.

> The criminal intent of an aider and abettor is presumed from
> his actions when he has knowledge of another's wrongful pur-
> pose for it the knowledge of that wrongful purpose plus the
> encouragement provided by the aider and abettor that makes
> the latter equally guilty with the perpetrator of a crime.

5. CRIMINAL LAW—AIDING AND ABETTING—KNOWLEDGE OF INTENT—
EVIDENCE, DIRECT, CIRCUMSTANTIAL—INFERENCE OF KNOWLEDGE OF
INTENT.

> An aider and abettor's knowledge of the wrongful purpose of
> another to commit a crime requiring specific intent may be
> established either by direct or circumstantial evidence from
> which knowledge of intent may be inferred.

6. CRIMINAL LAW—AIDING AND ABETTING—COMMON UNLAWFUL EN-
TERPRISE—QUESTION OF FACT.

> Whether a crime committed is fairly within the scope of a common
> unlawful enterprise is a question of fact for the jury.

7. CRIMINAL LAW—AIDING AND ABETTING—ASSAULT WITH INTENT TO
MURDER—CIRCUMSTANTIAL EVIDENCE—INFERENCE OF INTENT.

> That defendant entertained the requisite intent to render him
> liable as a principal for assault with intent to commit murder
> could be properly inferred by the jury from circumstantial
> evidence showing that defendant knew there was a shotgun
> in the car being used by him and his confederates, that de-
> fendant, who acted as a lookout, was aware of the fact that
> his confederates might use that gun to effectuate their escape

from the building which they were burglarizing, and if the jury drew that inference, then it could properly conclude that the use of the shotgun was fairly within the scope of the common criminal enterprise and that defendant was equally responsible for the act of a confederate in shooting the manager of the burglarized building in order to effectuate an escape.

Appeal from Genesee, John W. Baker, J. Submitted Division 2 March 9, 1969, at Lansing. (Docket No. 4,773.) Decided November 25, 1969.

Marathon Poplar was convicted by a jury of aiding and abetting a breaking and entering and an assault with intent to commit murder. Defendant appeals. Affirmed.

*Frank J. Kelley,* Attorney General, *Robert A. Derengoski,* Solicitor General, *Robert F. Leonard,* Prosecuting Attorney, and *Donald A. Kuebler,* Assistant Prosecuting Attorney, for the people.

*Draper, Daniel & Ruhala (W. Schuyler Seymour, Jr.,* of counsel), for defendant.

Before: J. H. GILLIS, P. J., and LEVIN and BRONSON, JJ.

J. H. GILLIS, P. J. Defendant was charged, as an aider and abettor,[1] with breaking and entering[2] and assault with intent to commit murder.[3] At trial, defendant moved for a change of venue on the ground that pre-trial publicity would prevent him from having a fair and impartial trial. The trial court, after conducting a *voir dire* examination of the jury, de-

---

[1] MCLA § 767.39 (Stat Ann 1954 Rev § 28.979).
[2] MCLA § 750.110 (Stat Ann 1962 Rev § 28.305).
[3] MCLA § 750.83 (Stat Ann 1962 Rev § 28.278).

nied the motion. Defendant also moved for a directed verdict on both charges on the ground that there was insufficient evidence to submit the case, on either charge, to the jury. These motions were also denied. Defendant was found guilty on both counts by a jury and on appeal alleges that the denial of his motions for a change of venue and for a directed verdict was error.

The breaking and entering was of the Oak Park recreation building in Flint and was carried out in the early morning of December 3, 1964, by Alfred Williams and Clifford Lorrick. When the manager of the building discovered the two men, Williams shot him in the face with a shotgun. Defendant allegedly acted as a lookout.

Williams was tried as a co-defendant and was convicted, along with this defendant, of breaking and entering and of assault with intent to commit murder. Williams' application for a delayed appeal was denied by this Court on April 18, 1967.

Lorrick pled guilty to breaking and entering on January 25, 1965, and testified for the prosecution at defendant's trial. He stated that he met defendant and Williams in a bar the night before the breaking and entering and left with them and two others. The five men allegedly drove around for a while before stopping to pick up some tools. They then took the tools and placed them in back of the bowling alley. An unsuccessful attempt to enter was made at that time. The group continued to drive around and during that time a shotgun that was in the car accidentally discharged, blowing a hole in the windshield. Just before the actual breaking and entering, the defendant, after getting out of the car with Lorrick and Williams, proceeded to a house directly across from the bowling alley. Lorrick testified that defendant went to see if anybody was watching.

Defendant took the stand and testified that he was in no way involved in the plans of Lorrick and Williams. He stated that the purpose of his going to the house across the street was to seek a friend who he thought would help him find employment.

In light of *People* v. *Freeman* (1969), 16 Mich App 63, the trial court's denial of defendant's motion for change of venue was not error. Neither was it error for the trial court to deny defendant's motion for directed verdict on the issue of whether defendant aided and abetted in the breaking and entering by acting as a lookout. The circumstances leading up to the offense, coupled with Lorrick's testimony, present sufficient evidence which, if believed by the jury, would support a conviction under the statute.

Since the jury found that defendant acted as a lookout, a more difficult question is whether defendant may be found guilty, as an aider and abettor, of assault with intent to commit murder.

Where a crime requires the existence of a specific intent, an alleged aider and abettor cannot be held as a principal unless he himself possessed the required intent or unless he aided and abetted in the perpetration of the crime knowing that the actual perpetrator had the required intent. 22 CJS, Criminal Law, § 87; 21 Am Jur 2d, Criminal Law, § 124.

"But it is the knowledge of the wrongful purpose of the actor plus the encouragement provided by the aider and abettor that makes the latter equally guilty. Although the guilt of the aider and abettor is dependent upon the actor's crime, the criminal intent of the aider and abettor is presumed from his actions with knowledge of the actor's wrongful purpose." *People* v. *Ellhamer* (1962), 199 Cal App 2d 777, 782; (18 Cal Rptr 905, 908).

There was no evidence that defendant harbored any intent to commit murder. Therefore, "knowl-

edge of the intent of Hill [Williams] to kill the deceased is a necessary element to constitute him [defendant] a principal. This, however, may be established either by direct or circumstantial evidence from which knowledge of the intent may be inferred." *Lee* v. *State* (1948), 152 Tex Crim 401 (214 SW2d 619).

A typical case of this kind is one where, as here, a crime not specifically within the common intent and purpose is committed during an escape. Convictions for aiding and abetting such crimes have been carefully scrutinized. In *People* v. *Knapp* (1872), 26 Mich 112, the defendant had gathered with several other men in an upper story of his building for the purpose of having forcible sexual intercourse with the deceased against her will. In order to avoid arrest, all the parties jumped out of a window. After the defendant had jumped, the deceased was either pushed or thrown out of the window by one of the other men present. As a result, she suffered injuries from which she died. Knapp was tried separately on an information charging him and the others with murder and was convicted of manslaughter. In reversing the conviction, the Court stated,

"The conviction of manslaughter could only have been under certain portions of the charge, permitting the jury to find it in case the injury was caused in an attempt of the various persons assembled in the paint shop to avoid an arrest. The language of the court, repeated nearly in the same terms twice, was as follows:

" 'In this case, if the jury should be satisfied (beyond the doubt that I have spoken of) that these defendants combined for the purpose of inducing this girl to go to that shop for the purpose of prostitution, and that they did induce her to go, and while at the shop all had connection with her, and, in order to avoid arrest or exposure, threw her out of the

window, without the intention of killing her, but by it she received injuries which caused her death, it would be manslaughter, because they were engaged in an act against public morals, and unlawful.'

"And the court refused to charge that, if the act was done under these circumstances without the concurrence of Knapp, he should not be convicted. Also refused to charge, that if the parties attempted to escape, and one of them, without the knowledge or consent of the other, helped or threw the deceased out of the window, then, none but those actually engaged in the act are liable for the consequences.

"The effect of these rulings was practically to hold that parties who have combined in a wrong purpose must be presumed, not only to combine in some way in escaping arrest, but also to be so far bound to each other as to be responsible severally for every act done by any of them during the escape.

"It is impossible to maintain such a doctrine. *It is undoubtedly possible for parties to combine in order to make an escape effectual, but no such agreement can lawfully be inferred from a combination to do the original wrong. There can be no criminal responsibility for any thing not fairly within the common enterprise, and which might be expected to happen if occasion should arise for any one to do it.* In other words, the principle is quite analogous to that of agency, where the liability is measured by the express or implied authority. And the authorities are quite clear, and reasonable, which deny any liability for acts done in escaping, which were not within any joint purpose or combination (citing authority).

"This ruling must have been of controlling weight with the jury. There is evidence tending to show that some person other than Knapp pushed, or threw, the deceased out of the window; but, if the testimony is all before us, it has very little, if any, bearing upon Knapp's complicity in the act which caused her death. He jumped out first, according to the clear

current of evidence, and it is not easy to discover in the record, proof of his part in any conspiracy or agreement, in pursuance or execution of which it can be inferred she was put out of the window." (pp 114, 115) (Emphasis supplied.)

See also, *People* v. *Foley* (1886), 59 Mich 553; *People* v. *Koharski* (1913), 177 Mich 194; *People* v. *McKeighan* (1919), 205 Mich 367; *State* v. *Winsett* (1964), — Del — (205 A2d 510); *Westry* v. *Commonwealth* (1965), 206 Va 508 (144 SE2d 427); *People* v. *Le Grant* (1946), 76 Cal App 2d 148 (172 P2d 554); *McClanahan* v. *United States* (CA 5, 1956), 230 F2d 919, *cert denied* (1956), 352 US 824 (77 S Ct 33, 1 L Ed 2d 47); *People* v. *Etie* (1953), 119 Cal App 2d 23 (258 P2d 1069).

Whether the crime committed was fairly within the scope of the common unlawful enterprise is a question of fact for the jury. In the present case, the evidence tends to show that the gun with which the victim was shot was removed from the trunk of the car to the front seat. It is not clear whether the defendant was present when the gun was moved but he was aware of its presence inside the car. Since the record also fails to reveal whether or not defendant knew that the gun was taken into the bowling alley, the question is whether it was proper for the jury to infer from the circumstantial evidence that the defendant entertained the requisite intent to render him liable as a principal for assault with intent to commit murder.

In our opinion the jury could reasonably infer from the defendant's knowledge of the fact that a shotgun was in the car that he was aware of the fact that his companions might use the gun if they were discovered commiting the burglary or in making their escape. See *Romero* v. *State* (1917), 101 Neb 650 (164 NW 554); *Hamilton* v. *People* (1885), 113

Ill 34, 55 Am Rep 396; *State v. Winsett, supra,* p 528. If the jury drew that inference, then it could properly conclude that the use of the gun was fairly within the scope of the common unlawful enterprise and that the defendant was criminally responsible for the use by his confederates of the gun in effectuating their escape.

Affirmed.

All concurred.