PEOPLE *v* HUDSON

1. JURY—FACTS—JURY QUESTION—APPEAL AND ERROR.
   Jurors are the sole judges of the facts and neither the trial court nor the Michigan Supreme Court can interfere with their exercise of that right and where there is a dispute in testimony the questions at issue were for the determination of the jury.

2. ROBBERY—VERDICT—EVIDENCE—GUILT BEYOND REASONABLE DOUBT —APPEAL AND ERROR.
   Michigan Supreme Court, in reviewing a jury verdict convicting defendant of unarmed robbery, must look at all of the evidence to determine whether there were facts from which the jury could have found defendant guilty beyond a reasonable doubt (MCLA 750.530).

3. ROBBERY — APPEAL AND ERROR — EVIDENCE — CREDIBILITY — JURY QUESTION.
   There was sufficient evidence to sustain defendant's conviction of unarmed robbery where there was direct evidence that de-

REFERENCES FOR POINTS IN HEADNOTES
[1] 53 Am Jur, Trial § 156 *et seq.*
[2] 5 Am Jur 2d, Appeal and Error §§ 838, 883.
[3] 46 Am Jur, Robbery § 50 *et seq.*

fendant was involved in a fight that took place when the robbery occurred and did have some of the money stolen from complainant, the testimony of a witness involved in the incident that she saw defendant in the scuffle was also sufficient, if believed, to sustain defendant's conviction, another witness also directly implicated the defendant in the crime and, while his testimony may have been contradictory, the quality and credence of that testimony was for the jury to determine; the testimony of these three witnesses was sufficient, if believed, to support a jury verdict of guilty; thus, the Michigan Court of Appeals erred in setting aside the jury's verdict (MCLA 750.530).

Appeal from Court of Appeals, Division 2, Bronson, P. J., and Fitzgerald and Churchill, JJ., reversing Monroe, James J. Kelley, Jr., J. Submitted December 8, 1971. (No. 9 December Term 1971, Docket No. 53,268.) Decided February 25, 1972.

29 Mich App 285 reversed.

Booker T. Hudson, Jr., was convicted of unarmed robbery. Defendant appealed to the Court of Appeals. Reversed. The people appeal. Reversed.

*Frank J. Kelley,* Attorney General, *Robert A. Derengoski,* Solicitor General, and *James J. Rostash,* Prosecuting Attorney, for the people.

*Patricia Costello,* for defendant on appeal.

SWAINSON, J. On July 29, 1969, shortly after midnight, Tom Settles and his son, Amado Settles, two migrant workers, drove to Monroe, Michigan, where they stopped at a bar known as the Traffic Jam. There was contradictory testimony as to the purpose of the Settles in going to the Traffic Jam. The Settles contended that they merely wanted a beer,

and other witnesses testified that the Settles attempted to secure the services of a prostitute.

The complainants testified that as they left the building someone invited them to the rear of the bar. Amado testified that one person held his arms while others hit him in the face. His wallet, containing $142, was taken from his pocket and the money removed. The empty wallet was then returned to him. He testified that there were six males and a female involved in the assault.

Tom Settles testified that he and his son were led behind the bar where someone grabbed him by the neck and choked him while a female removed money from his pocket and someone else removed his hat, which had $57 concealed inside the headband. The hat was returned without the money. Both complainants were told to leave the area, and they did.

At the trial, neither complainant was able to identify defendant as one of the participants in the crime, nor could either complainant remember if he had seen the defendant in the bar prior to the incident.

Defendant testified that he was present at the bar when the incident occurred, but that he ran from the scene when the commotion started. Defendant further testified that he found a $50 bill on the sidewalk after the fight was over, picked it up, and began looking for money. Charles Garrett, who had previously been convicted for his participation in the crime, testified that the defendant was present at the scene of the crime and had participated in the actual commission of the crime. He testified that he saw defendant take money from Amado Settles during the fight. Carolyn Page, another admitted participant, testified that she saw defendant in the scuffle. Jacob Hood testified that after the robbery he, Hood, took money from defendant's hand.

Defendant was convicted of unarmed robbery by a jury.* A majority of the Court of Appeals reversed, holding that the evidence was insufficient as a matter of law to prove beyond a reasonable doubt that defendant participated in the crime. Judge CHURCHILL dissented from the majority opinion. 29 Mich App 285. We granted leave to appeal. 384 Mich 836.

The issue in this case is whether there was sufficient evidence to sustain defendant's conviction for unarmed robbery. The limited function of an appellate court in reviewing a jury verdict is well settled by numerous decisions of our Court. In *People* v *Miller,* 301 Mich 93, 100 (1942), the Court stated:

"Jurors are the sole judges of the facts and neither the trial court nor this court can interfere with their exercise of that right."

In *People* v *Inman,* 315 Mich 456, 473 (1946), the Court said:

"In view of the dispute in the testimony the questions at issue were for the determination of the jury * * * ."

See, also, *People* v *Anschutz,* 335 Mich 375 (1953).

Thus, we must look at all of the evidence to determine whether there were facts from which the jury could have found defendant guilty beyond a reasonable doubt. The Court of Appeals, in its majority opinion, stated (pp 287, 289):

"The only testimony that directly implicated defendant in the crime was that of Charles Garrett, an admitted participant in the crime. Mr. Garrett's testimony was replete with contradictions, as evi-

---

* MCLA 750.530; MSA 28.798.

denced by the following portions of the transcript:
* * *   [Testimony quoted.]

"An exhaustive review of the record establishes only that the defendant was present at the scene of the crime, yet neither his direct nor indirect participation in it was established. Thus, the jury was asked to infer from the defendant's presence at the bar and his flight from it that he was a participant."

We do not reach the question of whether the Court of Appeals acted properly in disregarding Garrett's testimony, because there was other evidence of defendant's direct participation in this crime sufficient to sustain the jury verdict.

Jacob Hood, one of the males involved, testified as follows:

"*Q.* Did you see the defendant there?
"*A.* Yes, he was back there at the time.
"*Q.* Did you see him doing anything in particular that you remember?
"*A.* Not in particular. I can't really say what I saw, you know, because it was just a bunch of people back there and there was a bunch of fighting going on.
"*Q.* I see. But the defendant was back there while the fight was going on?
"*A.* At one time. When I left from back there he was standing half way between the bar. He had some money in his hand and I took some money out of his hand."

Thus, there was direct evidence that defendant was involved in the fight that took place and did have some of the money stolen from the complainant. The testimony of Carolyn Page, the lone female involved in the incident, was also sufficient, if believed, to sustain defendant's conviction. She testified:

"*Q.* When did you first see Booker Hudson, then?

"*A.* I saw Booker Hudson—I really don't remember where he came from. I remember seeing him back there. * * *

"*Q.* Did you see him participate in this?

"*A.* I remember seeing him around the young Mexican and it was all a big scuffle because everybody was beating on him, you know. Well, you know, they was all tangled in together.

"*Q.* I see. Did you see anybody hit the younger Mexican.

"*A.* Yes, I saw Elliott James hit him and I saw him being pushed around a lot and hit.

"*Q.* Booker Hudson was back there, was he not?

"*A.* Yes, he was back there.

"*Q.* Did you do anything to participate in this?

"*A.* Yes.

"*Q.* What did you do?

"*A.* Charles Garrett hollered to me and told me to take the money out of the left pocket of the older Mexican and I took the money out and as I took it out Elliott James came and took everything I had out of my hand.

"*Q.* I see.

"*A.* And during that time I don't remember seeing too much going on.

"*Q.* But during—this time you have identified that Booker T. Hudson was back there?

"*A.* Yeah, he was back there.

"*Q.* You didn't see—was he involved in this general scuffle?

"*A.* That's where I saw him when I did see him. Then I saw him later walking—I don't know where he was walking—he was back there, and you know they was all moving around, but I remember seeing him in the scuffle.

"*Q.* With the older Mexican?

"*A.* With the younger Mexican. Around him.

"*Q.* Is it your testimony that when you were walking back to the back of the bar Booker Hudson was not there that you could remember?

"*A.* No, he wasn't back there. I don't remember seeing him back there.

"*Q.* Is it your testimony that later on you saw him back there when the fight was going on?

"*A.* M-m.

"*Q.* And he was participating in the general scuffle, is that right?

"*A.* Yeah. I saw him when the young Mexican was being beaten up and he was around then. I remember seeing him then.

"*Q.* Now, it's pretty dark in back of the Traffic Jam, is it not?

"*A.* Yes, pretty dark.

"*Q.* But you know that Booker Hudson was back there and you can identify him as being back there, is that right?

"*A.* Yes, I remember him being back there. * * *

"*Q.* And you didn't see Booker Hudson then until sometime during the incident itself, did you?

"*A.* No. I don't remember seeing him at any time until actually everything got started and then I remember seeing him in the scuffle with the younger Mexican."

In addition, Charles Garrett also directly implicated defendant in the crime and, while his testimony may have been contradictory, the quality and credence of the testimony was for the jury to determine. The testimony of Charles Garrett, Carolyn Page, and Jacob Hood, was sufficient, if believed, to support a jury verdict of guilty.

The Court of Appeals erred in setting aside the jury's verdict. The Court of Appeals is reversed and the verdict of the jury is affirmed.

T. M. KAVANAGH, C. J., and BLACK, ADAMS, T. E. BRENNAN, and WILLIAMS, JJ., concurred with SWAIN-SON, J.

T. G. KAVANAGH, J., concurred in the result.