PEOPLE v WRIGHT

1. CRIMINAL LAW—EVIDENCE—SUFFICIENCY—APPEAL AND ERROR.

A challenge to the sufficiency of the evidence does not involve judicial discretion, need not be preserved by motion for a new trial, and may be raised for the first time on appeal.

2. HOMICIDE—MANSLAUGHTER—AIDING AND ABETTING—EVIDENCE—SUFFICIENCY.

Evidence was sufficient to convict defendant of manslaughter, even though he did not kill the victim by his own act, where defendant, during an argument, threatened to blow the victim's brains out, plotted with his companions at defendant's house to return for a shoot-out with the victim, which was defendant's idea, and, standing behind his accomplice, also aimed his loaded rifle at the victim when the shooting occurred; his accomplice's statement that "nobody ain't going to mess around with me", coupled with the carrying of loaded rifles to the shooting scene, was sufficient to put defendant on notice that a serious injury or death was likely to be the natural and probable consequence of their conduct (MCLA 750.321, 767.39).

3. CRIMINAL LAW—AIDING AND ABETTING—EVIDENCE.

The amount of advice or encouragement rendered by one charged with aiding and abetting a crime is immaterial if the net effect was to induce the commission of the crime (MCLA 767.39).

4. CRIMINAL LAW—INTENT—CIRCUMSTANTIAL EVIDENCE—INFERENCES.

The jury may properly infer from circumstantial evidence the requisite intent to render one liable as a principal in the commission of a crime (MCLA 767.39).

Appeal from Recorder's Court of Detroit, George T. Ryan, J. Submitted Division 1 November 10,

REFERENCES FOR POINTS IN HEADNOTES

[1] 21 Am Jur 2d, Criminal Law § 226.
[2] 40 Am Jur 2d, Homicide § 425 et seq.
[3] 21 Am Jur 2d, Criminal Law § 123.
[4] 21 Am Jur 2d, Criminal Law § 82.

1972, at Detroit. (Docket No. 12627.) Decided December 6, 1972.

Myles Wright was convicted of manslaughter. Defendant appeals. Affirmed.

*Frank J. Kelley,* Attorney General, *Robert A. Derengoski,* Solicitor General, *William L. Cahalan,* Prosecuting Attorney, *Dominick R. Carnovale,* Chief, Appellate Department, and *Robert E. Berg, Jr.,* Assistant Prosecuting Attorney, for the people.

*Dalton A. Roberson,* for defendant on appeal.

Before: LESINSKI, C. J., and FITZGERALD and VAN VALKENBURG,* JJ.

FITZGERALD, J. Defendant appeals as of right from a jury conviction for manslaughter.[1] The sole question before us is whether sufficient evidence was presented to sustain a jury conviction of manslaughter.

Defendant and three friends, Marshall Martin, Harold Jones, and Gerald Jordan, were driving around in Jordan's Volkswagen van. Martin spotted Michael Moore at a Shell service station and asked the driver, Jordan, to pull in and stop. Everyone exited the van while defendant alone entered the building to speak with Moore regarding a $2 debt owed to defendant. Moore stated he was not going to pay the money. Further exchanges between the two led to a fist fight. Moore then drew a knife and pursued the defendant, who retreated across the street, eventually escaping into the van. Defendant testified that Moore then

---

* Former circuit judge, sitting on the Court of Appeals by assignment pursuant to Const 1963, art 6, § 23 as amended in 1968.

[1] MCLA 750.321; MSA 28.553.

unsuccessfully attempted to knife Jordan. There was contradictory testimony to the effect that defendant stated, "If we can't settle this one way, we'll settle it another", and "I'll blow his brains out" prior to leaving the service station in Jordan's van.

Jordan dropped defendant and the others off before returning home. Shortly thereafter, Jones came to Jordan's house, picked up his rifle, and went to defendant's house where he was soon joined by Martin. Meanwhile, Moore and some friends drove to Jordan's house where a fight between Jordan, Moore, and Moore's friend, Sam, occurred. The fighting stopped, Moore and his friends left, and Jordan walked to defendant's house. There the four discussed the altercation between Jordan, Moore, and Sam, and decided to retaliate by returning to the service station. Testimony revealed defendant stated, "We ain't going to do nothing * * * just a little shoot-out".

The four of them left defendant's house and were met outside by Eddie Ford and Allen Parker. Defendant and Jones carried rifles as the six of them boarded the van. Defendant testified that he asked Jones to unload his rifle enroute to the service station, but this statement was controverted by Martin who testified that it was Jones who requested that defendant unload the rifles. Upon arrival at the station, Moore started running out of the building away from the van as Jones and defendant jumped out the side doors holding their rifles. Jones aimed and fired one shot which struck Moore as he was running about 30 feet away. The shot punctured Moore's lung and heart and he was dead within 15 seconds. A service station employee testified that defendant was standing behind Jones aiming his rifle in the

direction of the victim. The two jumped back into the van and departed immediately. Testimony was introduced that someone in the van stated, "Does anybody else want any?" Defendant testified he asked Jones why he shot Moore.

Jones subsequently pled guilty to manslaughter. The two rifles were found by the police after their location was revealed by defendant. An expended shell and six live bullets were found in Jones' rifle and a clip with ten live bullets was found in defendant's rifle. Defendant had testified that his rifle was not loaded.

The people contend defendant's failure to move for a new trial precludes review of sufficiency of the evidence. Review in this case is proper. A challenge to the sufficiency of the evidence does not involve judicial discretion, need not be preserved by motion for a new trial, and may be raised for the first time on appeal. *People v Jimmie Ragland,* 34 Mich App 673 (1971).

Defendant asserts his presence during the discussion at his house and enroute to the station and his subsequent exit from the van immediately prior to the shooting is insufficient to connect him with the crime of manslaughter. The people argue sufficient evidence was presented to prove the direct commission of a manslaughter, and that defendant aided and abetted in the commission of that offense.

Manslaughter is not defined by statute. The common-law definition appears in *People v Droste,* 160 Mich 66, 79 (1910), as "the unlawful killing of another without malice, expressed or implied". The distinction between voluntary and involuntary manslaughter was enunciated in *People v Ryczek,* 224 Mich 106, 109–110 (1923):

" 'Voluntary manslaughter is the killing of another

intentionally, but in a sudden heat of passion due to adequate provocation, and not with malice. * * * Involuntary manslaughter is the killing of another without malice and unintentionally, but in doing some unlawful act not amounting to a felony nor naturally tending to cause death or great bodily harm, or in negligently doing some act lawful in itself, or by the negligent omission to perform a legal duty.' "

It is not necessary to show provocation in order to sustain every conviction of manslaughter. *People v Clark,* 5 Mich App 672, 678 (1967). Thus, the conduct of Jones is consistent with the common-law definition of manslaughter.

It remains to be decided whether defendant's complicity in the commission of the offense is sufficient to adjudge him a principal pursuant to MCLA 767.39; MSA 28.979.[2] We believe his conduct did constitute aiding and abetting within the meaning of the statute.

Defendant contends that his mere presence at the scene of the shooting is insufficient to implicate him as an aider and abettor of the offense. *People v Johnson,* 4 Mich App 205 (1966); *People v Burrel,* 253 Mich 321 (1931). In *Johnson,* defendant's presence at the scene of the crime was the *only* incriminating evidence adduced. The quantum of evidence of aiding and abetting presented in the instant case extends considerably beyond mere presence. The jury could reasonably infer an intent to do bodily harm to the victim based upon the witnesses' testimony. The following evidence was presented:

Defendant told the victim he was going to get

[2] "Every person concerned in the commission of an offense, whether he directly commits the act constituting the offense or procures, counsels, aids, or abets in its commission may hereafter be prosecuted, indicted, tried and on conviction shall be punished as if he had directly committed such offense."

his pistol during the first altercation; when the fighting between defendant and Moore stopped, defendant said, "If we wouldn't settle it this way, we'd settle it another way"; defendant was also heard to have remarked that he was going to "blow Moore's brains out"; defendant did most of the talking during the discussion at his house and said they were planning a "shoot-out or something"; it was defendant's idea to return to the station; defendant and Jones were both armed with loaded rifles; defendant jumped out of the van and was standing behind Jones with his rifle aimed toward the victim when the shooting occurred. Taken together, the preceding evidence bespeaks an intent to assault the victim at the very least. It is not improbable that the natural consequences of this attempted assault would result in the death of Michael Moore.

*Burrel* reversed a conviction of the driver of a car in which a statutory rape was committed by another in the rear seat. It was not shown the driver had any knowledge of his passenger's criminal intent. The instant case differs significantly. Testimony reveals that Jones stated in the presence of defendant that "nobody ain't going to mess around with me". This statement, coupled with the carrying of loaded rifles to the station, was sufficient to put defendant on notice that the likelihood of a serious injury or death would be the natural and probable consequences of such conduct.

Appellate courts must tread lightly in reviewing a jury determination in a criminal appeal. Juries are in a superior position to determine the credibility of all that passed before them. *People v Spann,* 3 Mich App 444 (1966). Nor is it material to consider the amount of advice or encourage-

ment rendered if the net effect was to induce the commission of a crime. *People v Washburn,* 285 Mich 119 (1938). It is proper for the jury to infer from circumstantial evidence the requisite intent to render one liable as a principal in the commission of a crime. *People v Poplar,* 20 Mich App 132 (1969). Defendant's complicity in the death of Michael Moore was sufficient to sustain a verdict of guilty.

Affirmed.

All concurred.