PEOPLE v BARNES (ON REMAND)

OPINION OF THE COURT

1. ROBBERY—ASSAULT WITH INTENT TO ROB—INTENT—EVIDENCE.

The expression "this is it" with no more uttered by an armed assailant during the perpetration of an assault is insufficient evidence from which a jury can find a specific intent to rob (MCLA 750.89).

2. ROBBERY—EVIDENCE—RES GESTAE STATEMENTS—ADMISSIBILITY.

The res gestae statement "that man in there is trying to rob me", made by the complainant to a witness after an assault, is conclusionary and not a statement of fact and cannot be used to prove the truth of the matter asserted (MCLA 750.89).

3. CRIMINAL LAW—INTENT—EVIDENCE—INFERENCE.

Criminal intent may be inferred from the facts but for the inference to be sustained the underlying facts must be contained in the evidence presented.

4. CRIMINAL LAW—IMPROPER CHARGE—OVERCHARGING.

The people risk the possibility that a person improperly charged by an overcharge will escape culpability for an offense which he did in fact commit.

DISSENT BY O'HARA, J.

5. ROBBERY—ASSAULT WITH INTENT TO ROB—EVIDENCE—QUESTION OF FACT.

*What a defendant who held a knife to the throat of his victim and said "this is it" meant by the phrase, and whether he had the specific intent to rob to sustain a conviction of assault with intent to commit robbery were questions for the jury (MCLA 750.89).*

REFERENCES FOR POINTS IN HEADNOTES

[1, 5] 67 Am Jur 2d, Robbery §§ 7, 55, 83.
[2] 67 Am Jur 2d, Robbery §§ 56, 57.
[3] 67 Am Jur 2d, Robbery §§ 49, 50.
[4] 21 Am Jur 2d, Criminal Law § 18.

Appeal from Recorder's Court of Detroit, Vincent J. Brennan, J. Submitted Division 1 December 7, 1970, at Detroit. (Docket No. 8115.) Decided February 20, 1973.

Feaster C. Barnes was convicted of assault with intent to rob being armed. Defendant appealed. Reversed, 30 Mich App 586. The people appealed by leave granted to the Michigan Supreme Court, which remanded the case to the Court of Appeals for further consideration, 387 Mich 770. Reversal of conviction affirmed.

*Frank J. Kelley,* Attorney General, *Robert A. Derengoski,* Solicitor General, *William L. Cahalan,* Prosecuting Attorney, *Dominick R. Carnovale,* Chief, Appellate Department, and *Robert A. Reuther,* Assistant Prosecuting Attorney, for the people.

*Charles G. Tangora,* for defendant on appeal.

Before: LESINSKI, C. J., and LEVIN and O'HARA,[*] JJ.

## ON REMAND

LESINSKI, C. J. This cause was remanded to the Court of Appeals for consideration in light of *People v Hudson,* 386 Mich 665 (1972), which reversed *People v Hudson,* 29 Mich App 285 (1970), decided in this Court.

Our initial decision in the instant cause is reported at 30 Mich App 586 (1971).

The issue on appeal in the Supreme Court in *Hudson* was whether there was sufficient evidence

---

[*] Former Supreme Court Justice, sitting on the Court of Appeals by assignment pursuant to Const 1963, art 6, § 23 as amended in 1968.

to sustain defendant's conviction of unarmed robbery, MCLA 750.530; MSA 28.798. The Court of Appeals, in *Hudson,* found that the only testimony that directly implicated defendant in the charge was that of an admitted participant in the crime, Charles Garrett. The Court of Appeals found Mr. Garrett's testimony so replete with contradictions as to be unwarranted of consideration. The Court of Appeals concluded that all that was established from the evidence in the record was that defendant was present at the scene of the crime.

The Supreme Court did not reach the issue of whether the Court of Appeals acted properly in disregarding Garrett's testimony as it found other evidence in the record of defendant's direct participation in this crime sufficient to sustain the jury's verdict. The Supreme Court delineated the evidence it found sufficient to sustain defendant's conviction.

In essence, in *Hudson* the Supreme Court found the Court of Appeals invaded the province of the jury because there was evidence presented which, if believed, was sufficient to convict the defendant.

We now reexamine the instant case in the light of *Hudson* as decided by the Supreme Court. The facts in the instant case are short and we restate them.

The testimony at trial showed that defendant was hitchhiking when, in exchange for shortcut directions to the Michigan Central Depot, he was given a ride by the complaining witness. The complainant's testimony was that while defendant was giving the directions, en route, the following took place after 15 minutes had elapsed:

"*A.* Well, he told me to drive on down, and so I started going to the viaduct. He said, 'No, don't go that

way, turn here.' * * * So I made a left turn there and
by the time I got half way of the block *[sic]* he put this
object around my neck; it looked. like a razor to me,
shoved into a handle, and he said, 'This is it, old man.' ''

A struggle ensued, the car crashed, and defendant
was apprehended by bystanders.

One witness testified that he heard complainant
say, after exiting the crashed vehicle, "That man
in there is trying to rob me".

Complainant's testimony was:

"*A.* He didn't get no money off me *[sic].*
"*Q.* He didn't ask for any money, did he?
"*A.* He didn't ask for any.
"*Q.* I see.
"*A.* He just told me, 'Old man, this is it.' ''

The evidence on the record presented to the
Barnes jury must be examined against the charge
lodged against him, namely, assault with intent to
rob being armed, MCLA 750.89; MSA 28.284.

There can be no question on the facts presented
in the record that if believed there was sufficient
evidence to establish an armed assault upon the
complainant.

Let us examine the testimony of the complain-
ant. The complainant testified: "So I made a left
turn there and by the time I got half way of the
block *[sic]* he put this object around my neck; it
looked like a razor to me, shoved into a handle,
and he said, 'This is it, old man' ''. As complain-
ant's testimony additionally quoted above shows,
the complainant specifically said that defendant
did not ask for money, that all he said was, "Old
man, this is it".

If any evidence of intent to rob is to be found in
the record of this case, it must come from the

expression, "Old man, this is it", made by an armed man.

Keeping in mind we find sufficient evidence of an armed assault, we find that the expression, "Old man, this is it", with no more is not sufficient evidence from which a jury can find a specific intent to rob.

The expression "this is it", as stated in our initial opinion, could have signaled a number of intentions. Evidence of this fact can be found in a report by the United Press International, as reported in The Detroit Free Press on Monday, August 23, 1971, of the bloody escape attempt in which six persons were killed at San Quentin Prison when a pistol was apparently smuggled in to Black revolutionary George Jackson by a visitor. We quote the following paragraph from the report:

"Warden Louis Nelson said Jackson was being searched at his cell about 3 p.m. after receiving a visitor when he suddenly pulled the pistol and said: 'This is it.' "

The question we ask ourselves is: "Can we allow a jury to find a specific intent to rob from use of a phrase such as was used here, as well as in a prison break that did not involve a robbery"?

Unlike in *Hudson* there is no evidence of specific intent for the jury to weigh or testimony which is to be tested for credibility.

We do not overlook the after-the-fact res gestae statement of the complainant made to a witness after he exited the crashed vehicle. The statement, "That man in there is trying to rob me" is conclusionary and is not a statement of fact. This testimony cannot be used to prove the truth of the matter asserted. At most it can show that an

accusation was made to which defendant did not respond.[1]

Our colleague on this panel, Justice O'HARA, in his dissent to the original opinion, sought to take this res gestae statement and add to it that it was made in earshot of the defendant and left undenied by him, and thus it should be concluded that this gave rise to an ample evidentiary basis for an inference of an intent to rob.

There is one problem with Justice O'HARA's proposition and that is that there is no evidence that the defendant was within earshot or that his condition after the accident was such that he could have responded had he wanted to. It has not been shown that he knew what was said nor that he was under an obligation to respond.

We affirm that intent may be inferred from facts in evidence. *Roberts v People,* 19 Mich 401 (1870). However, for the inference to be sustained the underlying facts must be present. There was no evidence of facts that would allow an inference.

This was a case in which the defendant was overcharged. The people in situations such as this risk the possibility that a person improperly charged will escape culpability for an offense he did in fact commit, as in this case.

Reversal of the conviction is affirmed.

LEVIN, J., concurred.

O'HARA, J. *(for affirmance).* I adhere to the position I took in my dissent when this case was first passed upon by this Court.

---

[1] *See People v Todaro,* 253 Mich 367 (1931); *cf. People v Bigge,* 288 Mich 417 (1939). In light of the fact that defendant was in the *crashed* vehicle when complainant's statement was alleged to have been made, the probative value of this evidence is discounted since there was no showing that defendant *heard* the accusation or had an opportunity to respond. *People v Courtney,* 178 Mich 137 (1913).

The precise point of disagreement with my colleagues in their somewhat revised opinion after remand by the Supreme Court is this. The majority holds:

"If any evidence of intent to rob is to be found in the record of this case, it must come from the expression, 'Old man, this is it', made by an armed man.

"Keeping in mind we find sufficient evidence of an armed assault, we find that the expression, 'Old man, this is it', with no more is not sufficient evidence from which a jury can find a specific intent to rob."

I hold it is.

I feel it is also necessary to comment on this portion of the majority opinion.

"The expression 'this is it', as stated in our initial opinion, could have signaled a number of intentions. Evidence of this fact can be found in a report by the United Press International, as reported in The Detroit Free Press on Monday, August 23, 1971, of the bloody escape attempt in which six persons were killed at San Quentin Prison when a pistol was apparently smuggled in to Black revolutionary George Jackson by a visitor. We quote the following paragraph from the report:

" 'Warden Louis Nelson said Jackson was being searched at his cell about 3 p.m. after receiving a visitor when he suddenly pulled the pistol and said, "This is it." ' 

"The question we ask ourselves is: 'Can we allow a jury to find a specific intent to rob from use of a phrase such as was used here, as well as in a prison break that did not involve a robbery'?"

The analogy, if there is any, escapes me. I respectfully point out that the phrase was not born at the time of the escape attempt.

It was attributed to Marines in World War II, as they boarded their landing craft to storm an enemy-held beach (but I must confess I did not hear

anyone in my L.C.V.P. at Okinawa employ it). I have heard it used triumphantly by a successful searcher seeking out an elusive short circuit, and by a judge who has just located a case he was trying to find to support a position he had taken contrary to that of his colleagues. After all, perhaps it must be as Humpty Dumpty said:

"When I use a word it means just what I choose it to mean—neither more nor less."[1]

It is my view that it was for the jury, as a cross-section of the community, to say what the ungrateful defendant in this case meant when he directed the words to the good Samaritan who had given him a ride, while holding a knife to his throat.

In any event irrespective of whether the anguished cry of the victim "that man in there is trying to rob me" was heard by the defendant and undenied by him, I still vote to affirm.

---

[1] Lewis Carroll, *Alice Through the Looking-Glass,* Chapter 6.