PEOPLE v REED

OPINION OF THE COURT

1. COURTS—JUDICIAL NOTICE—WORDS AND PHRASES—MEANINGS OF
   WORDS.

   Courts will take judicial notice of the ordinary meanings of
   English words, but not of uncommon or extraordinary mean-
   ings applied in isolated cases or in particular localities; that a
   word has acquired a peculiar meaning, different from its ordi-
   nary meaning, is a fact requiring proof.

2. CRIMINAL LAW—EVIDENCE—INTENT—WORDS AND PHRASES—
   MEANINGS OF WORDS.

   A finding of specific intent to rob, in a trial for felony murder,
   was supported by sufficient evidence where a witness testified
   that one of the participants in the crime told the witness to
   "set it out", an expression which meant that he was to hand
   over his money.

3. ROBBERY—CRIMINAL LAW—EVIDENCE—INTENT.

   A jury could properly find that a defendant possessed specific
   intent to rob where there was testimony that the defendant
   initiated the incident by pulling out a handgun, which allowed

REFERENCES FOR POINTS IN HEADNOTES

[1, 2] 29 Am Jur 2d, Evidence § 90.

[2] 67 Am Jur 2d, Robbery §§ 15, 16, 20 *et seq.*, 33.

[3] 67 Am Jur 2d, Robbery §§ 4, 44.

[4] 29 Am Jur 2d, Evidence §§ 371–373, 610.
   Admissibility of evidence as to extrajudicial or pretrial identifica-
   tion of accused. 71 ALR2d 449.

[5] 5 Am Jur 2d, Appeal and Error §§ 623, 891.

[6] 40 Am Jur 2d, Homicide §§ 498, 506, 534, 535.
   Absence of evidence supporting charge of lesser degree of homicide
   as affecting duty of court to instruct as to, or right of jury to
   convict of, lesser degree. 21 ALR 628, s. 27 ALR 1100, 102 ALR
   1019.

[7] 75 Am Jur 2d, Trial §§ o76 *et seq.*, 888.

[8] 5 Am Jur 2d, Appeal and Error § 896.

[9, 10] 5 Am Jur 2d, Appeal and Error § 783 *et seq.*

his coparticipant to pick up a shotgun which was in the room and announce a robbery.

4. CRIMINAL LAW—EVIDENCE—WRITTEN STATEMENT—PAST RECOLLECTION RECORDED—PREJUDICE—CURING ERROR.

Allowing a witness's written statement identifying a defendant at a previous lineup to be read without a proper foundation being laid for admission of the statement under the doctrine of past recollection recorded was error, but the error was not prejudicial where it was cured when the statement was stricken.

5. CRIMINAL LAW—INSTRUCTIONS TO JURY—APPEAL AND ERROR—MISCARRIAGE OF JUSTICE.

Review of a jury instruction is limited to whether there was a miscarriage of justice, where the instruction was not objected to at trial.

6. CRIMINAL LAW—INSTRUCTIONS TO JURY—ARMED ROBBERY—FELONY MURDER—MANSLAUGHTER—MISCARRIAGE OF JUSTICE.

An incomplete jury instruction on armed robbery did not result in a miscarriage of justice where the defendant was charged with felony murder but the jury ruled out armed robbery in the context of felony murder when it found the defendant guilty of manslaughter.

7. HOMICIDE—MANSLAUGHTER—INSTRUCTIONS TO JURY—VOLUNTARY MANSLAUGHTER—INVOLUNTARY MANSLAUGHTER.

A jury was properly given a general instruction on manslaughter where the facts supported a finding of manslaughter, and there is no distinction in punishment between voluntary and involuntary manslaughter.

8. CRIMINAL LAW—PROSECUTORS—IMPROPER CONDUCT—HARMLESS ERROR.

Improper conduct by a prosecutor who repeated leading questions over objections which were sustained was harmless error where the questions related to a robbery in the context of a felony murder but the jury acquitted the defendant of that charge.

DISSENT BY R. M. MAHER, J.

9. APPEAL AND ERROR—REVERSIBLE ERROR—HARMLESS ERROR—STANDARDS FOR DETERMINATION.

*The standards for determining whether error is reversible or harmless are, first, is the error so offensive to the maintenance of a sound judicial process that it never can be regarded as*

*harmless, and second, if not so basic, can a belief be declared that the error was harmless beyond a reasonable doubt.*

10. CRIMINAL LAW—PROSECUTORS—PREJUDICIAL MATERIAL—LEADING QUESTIONS.

*A prosecutor's deliberate injection of prejudicial material into the proceedings, by his repeated asking of leading questions over objections which were sustained, is so offensive to the maintenance of a sound judicial process that it never can be regarded as harmless.*

Appeal from Recorder's Court of Detroit, John Patrick O'Brien, J. Submitted October 17, 1975, at Detroit. (Docket No. 21567.) Decided February 9, 1976.

Richard D. Reed was convicted of manslaughter. Defendant appeals. Affirmed.

*Frank J. Kelley,* Attorney General, *Robert A. Derengoski,* Solicitor General, *William L. Cahalan,* Prosecuting Attorney, *Patricia J. Boyle,* Principal Attorney, Research, Training and Appeals, and *Robert A. Reuther,* Assistant Prosecuting Attorney, for the people.

*George C. Dovas,* for defendant on appeal.

Before: V. J. BRENNAN, P. J., and BASHARA and R. M. MAHER, JJ.

BASHARA, J. The defendant was convicted by a jury of manslaughter, MCLA 750.321; MSA 28.553, and appeals.

On May 1, 1973 the defendant and James Gafney visited the apartment of the deceased, Andre Fair, and Ronald Kline. According to the testimony of the defendant, Gafney requested the defendant to accompany him to the apartment to obtain a refund from Fair for poor quality narcot-

ics allegedly purchased from him. Kline, on the other hand, testified that the defendant and Gafney came to the apartment to show him some pills.

After entry into the apartment, the defendant testified that Gafney asked Fair to return his money. Fair refused and pulled a handgun. The defendant reached for the gun and a struggle ensued among Fair, Gafney and the defendant. During the struggle the handgun discharged and Fair was mortally wounded.

Kline's version was that upon entry into the apartment the defendant pulled a handgun and assaulted Fair. During the struggle between the defendant and Fair, Gafney grabbed a shotgun that was in the apartment and held Kline at bay. Gafney then stated "set it out". As the fray continued a window was broken, diverting the attention of Gafney and allowing Kline to escape. Kline heard a shot while fleeing from the room. Fair had been mortally wounded.

The defendant was charged with felony murder. MCLA 750.316; MSA 28.548. The jury was instructed on both felony murder and manslaughter. A conviction for manslaughter was returned.

The first issue presented is whether there was sufficient evidence of a specific intent to rob to support an instruction on felony murder. Defendant argues that *People v Barnes (On Remand)*, 44 Mich App 488; 205 NW2d 591 (1973), *lv den*, 389 Mich 795 (1973), negates such a finding of specific intent. In *People v Barnes, supra,* the complainant picked up the defendant hitchhiker. The defendant pulled a razor and placed it at the complainant's neck, stating: "This is it, old man." The defendant did not ask for any money. There was no other evidence of what the defendant meant by "[t]his is

it". The court reversed the conviction for assault
with intent to rob for that reason.

"Words sometimes acquire a peculiar significa-
tion, in a particular locality, different from their
ordinary meaning, but, when such is the case, it is
a fact requiring proof, and not a fact which the
court can take judicial notice of; the rule being
that courts will take judicial notice of the ordinary
meaning of English words, but not of uncommon
or extraordinary meanings applied in isolated
cases or in particular localities." *People v Gastro,*
75 Mich 127, 131–132; 42 NW 937 (1889). Unlike
*People v Barnes, supra,* the record discloses the
peculiar signification of "set it out". Kline testified
that the expression meant that he was to give his
money to Gafney. In fact, Kline explained that he
was reaching for his money when the opportunity
for escape arose. The evidence could have sup-
ported a finding of specific intent to rob. Accord,
*Jefferson v State,* 298 So 2d 465 (Fla App 1974),
"give it up"; *Porter v State,* 241 Ala 91; 1 So 2d
310 (1941), "get going" accompanied by threat to
kill. We decline to follow the reasoning of *People v
Barnes, supra.*

Defendant further argues that even if there was
evidence to support the element of robbery in the
felony murder charge against Gafney, there was
no evidence that the defendant had the necessary
specific intent to rob. We disagree. *People v Sharp,*
57 Mich App 624, 626; 226 NW2d 590 (1975),
stated:

"[A]rmed robbery is a specific intent crime. *People v
Kelley,* 21 Mich App 612; 176 NW2d 435 (1970), *lv den,*
383 Mich 792. Therefore, it is essential that the prose-
cution prove beyond a reasonable doubt that the defend-
ant possessed specific intent or that he aided and abet-
ted in the perpetration of the crime knowing that his

coparticipants had the necessary specific intent. *People v Poplar,* 20 Mich App 132; 173 NW2d 732 (1969), *People v McGuire,* 39 Mich App 308; 197 NW2d 469 (1972), *lv den,* 387 Mich 810. The requisite intent may properly be inferred by the jury from circumstantial evidence. *People v Wright,* 44 Mich App 111; 205 NW2d 62 (1972), *People v Poplar, supra.*"

If the jury believed the testimony of Kline, they could have found the defendant possessed the requisite intent to rob when he initiated the incident by pulling a handgun. This allowed Gafney to grab the shotgun, get the drop on Kline and announce the robbery.

Defendant argues that it was reversible error for the trial judge to allow the defendant's line-up attorney to read Kline's written statement identifying the defendant and Gafney at a line-up. The statement was prepared by a police officer and signed by the line-up attorney. A proper foundation was not laid for admission of the written statement under the doctrine of past recollection recorded. This was error, but not prejudicial error because the error was cured when the statement was stricken. *People v Mitchell,* 298 Mich 172, 181; 298 NW 495 (1941), *Detroit v O'Connell,* 19 Mich App 538, 540; 172 NW2d 875 (1969), *lv den* 383 Mich 762 (1970).

Defendant also contends that the trial judge erred by giving an incomplete instruction on armed robbery.[1] We agree. However, where the instruction was not objected to at trial our review is limited to whether there was a miscarriage of

---

[1] The trial judge's complete instruction on armed robbery was as follows:

"Now in order to constitute robbery, it is necessary that the taking be felonious, that it is done with the intent to commit a crime and not under any claim of ownership.

"It is well settled that a person cannot be guilty of robbery in taking that to which he has a right."

justice. *People v Charles,* 58 Mich App 371, 378–379; 227 NW2d 348 (1975), GCR 1963, 516.2, MCLA 769.26; MSA 28.1096. The jury ruled out armed robbery in the context of felony murder when it found the defendant guilty of manslaughter. The jury was not placed in a compromising position because the evidence could have supported a finding of robbery within the context of felony murder. The defendant should not be heard to complain of an incomplete instruction on armed robbery in the context of felony murder, when the evidence supports a finding of armed robbery, but the jury acquits him of the charge. There was no miscarriage of justice.

The next issue raised on appeal is whether the trial judge improperly instructed the jury on manslaughter. The instruction was as follows:

"[M]anslaughter is the unjustified killing of another without malice and without premeditation * * * ."

Defendant contends that *People v Townes,* 391 Mich 578; 218 NW2d 136 (1974), requires the jury to instruct separately on voluntary and involuntary manslaughter when the factual situation can support either crime. We disagree. The Court in *People v Townes, supra,* found that the trial judge had initially instructed the jury on second-degree murder and a combination of voluntary and involuntary manslaughter. Subsequently, the jury asked for a clarification on the elements of second-degree murder and manslaughter. The trial judge instructed the jury on second-degree murder and involuntary manslaughter. The Supreme Court ruled that the trial judge's supplementary instructions excluded voluntary manslaughter from the jury's consideration. Since the evidence on the

manslaughter charge more appropriately supported a finding of voluntary manslaughter, the Court reasoned that the only reasonable choice left the jury was a finding of guilty under the more serious offense of second-degree murder.

We are not faced with the problem raised in *People v Townes, supra.* The facts supported a finding under either felony murder or manslaughter and the jury was so charged. Since there is no distinction in punishment between voluntary and involuntary manslaughter, the defendant was not prejudiced. This general instruction on manslaughter was proper. *People v Carter,* 387 Mich 397, 418; 197 NW2d 57 (1972), *People v Onesto,* 203 Mich 490, 496; 170 NW 38 (1918), *People v Knott,* 59 Mich App 105, 114; 228 NW2d 838 (1975).

The next issue raised by the defendant is that it was improper for the trial judge to instruct the jury on manslaughter when defendant was charged with one count of felony murder. We find no error in this procedure under the recent Michigan Supreme Court decision of *People v Carter,* 395 Mich 434; 236 NW2d 500 (1975).

The defendant also argues that on three different occasions the prosecutor repeated leading questions over objections that were sustained. Our review of the record reveals that the conduct of the prosecutor was improper. "The rulings of the court are to be followed and when they are not the court should exercise its power of contempt or at least reprimand the offending person in the jury's presence." *People v Brocato,* 17 Mich App 277, 305; 169 NW2d 483 (1969). The questions related to the robbery in the context of the felony murder, but the jury acquitted the defendant of that charge. Therefore, we declare the error was harmless beyond a reasonable doubt. *People v Robinson,* 386 Mich 551, 563; 194 NW2d 709 (1972).

Finally, there was no error in the instruction on reasonable doubt. *People v Davies,* 34 Mich App 19; 190 NW2d 694 (1971), *lv den* 385 Mich 773 (1971).

Affirmed.

V. J. BRENNAN, P. J., concurred.

R. M. MAHER, J. *(dissenting).* The majority opinion acknowledges "the conduct of the prosecutor was improper", that "on three different occasions the prosecutor repeated leading questions over objections that were sustained". For example, on one occasion, the following took place:

"*Q. [Prosecutor]:* Was part of the arrangement between you and Mr. Gaffney that you were supposed to give him something after you ripped off Mr. Fair's apartment?

"*[Counsel for defendant]:* I object to that, there's been no testimony that there has been anything in evidence about any agreement to rip off, it's putting words * * *

"*The Court:* Sustain the objection.

"*Q. [Prosecutor]:* Isn't it true that there was an agreement between you and Mr. Gaffney that you give him something for robbing Mr. Andre Fair's apartment?

"*[Counsel for defendant]:* Your Honor, there's been no evidence that there was any agreement to rob the apartment.

"*The Court:* Sustained.

"*[Prosecutor]:* I'm asking him if he * * *

"*The Court:* I sustained the objection.

"*Q. [Prosecutor]:* Wasn't there an agreement between you and Mr. Gaffney that you would pay him something if he helped you rob Andre Fair's apartment?

"*[Counsel for defendant]:* Your Honor, I'm getting close to asking for a mistrial, that's four times, he is trying to put testimony in his words before the jury. There's a limit as to what you can tell him to disregard.

I don't want to keep jumping up like a jumping jack
* * * he's trying to make this jury think I'm trying to
hide something. There's no evidence * * *

"*The Court:* * * * [Y]ou have every reason to jump
up and object to the question."

However, the majority opinion declares such error
harmless beyond a reasonable doubt, citing *People
v Robinson,* 386 Mich 551, 563; 194 NW2d 709
(1972).

The standards for determining whether error is
reversible or harmless are:

"First, is the error so offensive to the maintenance of
a sound judicial process that it never can be regarded
as harmless? Second, if not so basic, can we declare a
belief that the error was harmless beyond a reasonable
doubt?" *People v Robinson, supra,* 563 (Citations omit-
ted.)

Thus, the initial step in determining whether er-
ror is harmless is to ascertain its impact upon the
maintenance of a sound judicial process. "An error
may be intolerably offensive if it is deliberately
injected into the proceedings by the prosecutor."
*People v Swan,* 56 Mich App 22, 32; 223 NW2d 346
(1974) (footnote omitted). I do not think that this
Court should condone the deliberate injection, by
the prosecutor in this case, of prejudicial material
by labeling such error harmless. I find such error
"so offensive to the maintenance of a sound judi-
cial process that it never can be regarded as
harmless".