PEOPLE v. HOROWITZ

1. ARSON—CORPUS DELICTI.
   The *corpus delicti* of arson consists of ·(1) the fact of a fire and · (2) that the fire was unlawfully caused by a person.

2. CRIMINAL LAW—EVIDENCE—SUFFICIENCY—INFERENCES.
   An inference upon an inference is allowable if the total evidence, including reasonable inferences, when put together is sufficient to warrant a jury's concluding that the defendant is guilty beyond a reasonable doubt.

3. ARSON—EVIDENCE—SUFFICIENCY.
   Sufficient evidence existed to support defendants' convictions of arson, the wilful and malicious burning of a building with intent to defraud the insurer, and the unlawful placing of inflammable substances in the building with intent to burn property where the building burned was defendants' catering company, the defendants had left the premises early in the morning, the fire was discovered about an hour after the defendants left, a member of the arson squad testified that he found a plastic container and a piece of molten plastic in the ruins, that he smelled flammable liquid in one of the plastic containers, and concluded that the fire could have been started by placing flammable liquids in the plastic, another arson inspector testified that he found the remains of a plastic container containing flammable substances, with a rope around the plastic container and that the container had had a triggering device, the building had not been broken into, the defendants by use of a timing device could have set the fire, the defendants owed three months rent, taxes and gas bills, and the defendants carried considerable fire insurance.

REFERENCES FOR POINTS IN HEADNOTES
[1, 3] 5 Am Jur 2d, Arson and Related Offenses § 5 *et seq.*
[2] 30 Am Jur 2d, Evidence § 1124 *et seq.*
[4] 5 Am Jur 2d, Arson and Related Offenses § 46 *et seq.*
  29 Am Jur 2d, Evidence § 266.

4. Arson — Evidence — Timing Device — Erroneously Admitted Evidence.

   Admitting, in defendants' trial for burning their own catering business, a candle, on the theory that a similar candle could have been used as a timing device, did not constitute reversible error where the prosecutor admitted that the candle had been taken from a box of unused candles in the burned building's office and that the candle was of the type of candle ordinarily found in catering establishments, the candle was eventually ruled inadmissible, and the jury was so instructed.

Appeal from Recorder's Court of Detroit, Robert E. DeMascio, J. Submitted Division 1 October 7, 1971, at Detroit. (Docket No. 10812). Decided November 23, 1971. Leave to appeal denied, 387 Mich 753.

Lawrence Henry Horowitz and William Kozin were convicted of arson, burning of a building to defraud the building's insurer, and the unlawful placing of inflammable and combustible substance in a building with the intent to burn the property. Defendants appeal. Affirmed.

*Frank J. Kelley,* Attorney General, *Robert A. Derengoski,* Solicitor General, *William L. Cahalan,* Prosecuting Attorney, *Dominick R. Carnovale,* Chief, Appellate Department, and *Angelo A. Pentolino,* Assistant Prosecuting Attorney, for the people.

*John D. O'Connell,* for defendants.

Before: Lesinski, C. J., and J. H. Gillis and O'Hara,* JJ.

O'Hara, J. Defendants, Lawrence Henry Horowitz and William Kozin, were charged in a six-count

---

* Former Supreme Court Justice, sitting on the Court of Appeals by assignment pursuant to Const 1963, art 6, § 23 as amended in 1968.

information with conspiracy to commit arson and substantive arson offenses. MCLA § 750.73 (Stat Ann 1962 Rev § 28.268); MCLA § 750.75 (Stat Ann 1962 Rev § 28.270); MCLA § 750.77 (Stat Ann 1962 Rev § 28.272).

The trial court directed verdicts for defendants on the conspiracy charges (counts 1–3) but allowed the arson charges to go to the jury which returned verdicts of guilty. They were placed on probation and fined $2,000 by the court. This appeal followed of right.

The specific charges upon which they were convicted were: (1) the wilful and malicious burning of the premises which they rented in their catering service, the premises not being a dwelling house or a building within the curtilage of a dwelling house; (2) the malicious and wilful burning of the previously described building which was insured, with intent to defraud the insurer; and (3) the unlawful placing of inflammable and combustible substance in the building with the intent eventually to burn the property.

Defendants allege that the people failed to establish the *corpus delicti* of the crime and that the proofs were insufficient to rebut the presumption that the fire was caused by accidental or natural means.

It is imprudent to discuss the *corpus delicti* of the crime of arson in a generic sense because of the statutory variations of the offense as it was known to the common law. Mr. Justice FEAD, speaking for a unanimous Supreme Court, observed that in general terms, "The *corpus delicti* in arson includes not only the fact of a fire, but also that it was unlawfully caused by a person". *People* v. *Porter* (1934), 269 Mich 284, 289. These requisite elements were

established in part by direct testimony and in part by permissible inference from established facts.

There was expert testimony tending to show that the most intense burning took place in the south banquet hall of defendants' business premises. Other testimony indicated that at the point of greatest destruction plastic remnants were discovered in which was found traces of a flammable liquid. It was the opinion testimony of a duly qualified expert witness that the fire was of an incendiary nature. That is to say, set by a person.

The record discloses that defendants had both the opportunity and the motive to set the fire. They had ready access to the premises. Their admittedly precarious financial condition furnished a plausible motive of recouping losses by insurance proceeds.

It is the nature of the offense of arson that it is usually committed surreptitiously. Rare is the occasion when eyewitnesses will be available. By necessity, proofs will normally be circumstantial.

We think that the evidence sufficiently established that the conflagration was of incendiary origin and not attributable to natural phenomena.

Objection is next made that the trial court erroneously permitted the prosecutor to prove his case by building inference upon inference. *People* v. *Petro* (1955), 342 Mich 299. It is claimed that an inference was initially drawn that the fire was of incendiary origin. It was then inferred that defendants set it.

In the law an important distinction obtains between the proscription in *People* v. *Petro, supra,* and the legitimate use of circumstantial evidence. As was observed in *Dirring* v. *United States* (CA 1, 1964) :[1]

---

[1] 328 F2d 512, 515, *cert den* (1964), 377 US 1003 (84 S Ct 1939,

"The defendant cautions us against 'piling inference upon inference.' As interpreted by the defendant this means that a conviction could rarely be justified by circumstantial evidence [citation omitted.] The rule is not that an inference, no matter how reasonable, is to be rejected if it, in turn, depends upon another reasonable inference; rather the question is merely whether the total evidence, including reasonable inferences, when put together is sufficient to warrant a jury to conclude that defendant is guilty beyond a reasonable doubt. [Citations omitted.] If enough pieces of a jigsaw puzzle fit together the subject may be identified even though some pieces are lacking. Reviewing the evidence in this case as a whole, we think the jury was warranted in finding beyond a reasonable doubt the picture of defendant Dirring."

We think the same is true of the case at bar.

Thirdly, defendants allege that insufficient evidence was adduced at trial to support a finding of guilty beyond a reasonable doubt. The record discloses evidence which, if believed, indicates the following:

Defendants operated a catering service on Wyoming Avenue in the City of Detroit. They rented two buildings which were adjacent to each other and which had a connecting structure between them. In the early morning hours of March 27, 1967, at approximately 3:40 a.m., a passerby observed the structures on fire and summoned the fire department. After the blaze was extinguished, the arson squad of the fire department conducted an investigation. Thereafter, charges were filed by the Wayne County Prosecutor.

At trial it was established that defendants had catered two parties the night preceding the fire.

12 L Ed 2d 1052), *reh den* (1964), 379 US 874 (85 S Ct 27, 13 L Ed 2d 83).

Both defendants and their hired help returned to the business offices on Wyoming Avenue. Not long thereafter, at approximately 2:20 a.m., Horowitz and Kozin secured the premises and left in the company of their employees. Horowitz departed in his own car. Kozin and his wife left in his automobile. Kozin loaned his wife's vehicle to one of the employees to drive the other hired help home. The fire was discovered at about 3:40 a.m.

Mr. Roger LaCasse, a member of the Detroit Fire Department Arson Squad, testified that after the fire had been extinguished, he examined the south building. The interior was completely burned and the walls badly charred. He gathered two items from the ruins: a piece of what appeared to be molten plastic, removed from a table located in the south building, and a plastic container which apparently had melted from the top down with the base still intact. This, too, was discovered on a table in the same structure. The witness also related that he had detected the smell of flammable liquid in one of the exhibits.[2] He concluded by giving his opinion that the fire could have been caused by placing flammable liquids in plastic containers found in the ruins.[3]

Another member of the arson squad, William O'Brien, testified that an arson detection device revealed the presence of a flammable substance in an area of the south building where he had smelled a suspicious odor. O'Brien further stated that he found a circular object (allegedly a plastic container) near the west end of the building. What

[2] When subjected to examination by the fire department chemist, this exhibit yielded highly flammable varnish makers' and painters' naphtha.

[3] During cross-examination, the witness conceded that there were other possible explanations for the fire. He admitted not having checked the gas lines or electrical wiring in the affected buildings.

appeared to be a cord or rope was embedded in or around this object. Adjacent to this container he discovered an unindentified liquid on the floor. He was later advised by the fire department chemist that both of these exhibits contained volatile varnish makers' and painters' naphtha.

In the witness's opinion two devices containing flammable liquid were strategically placed in the south building with a triggering device to ignite them. He reasoned that the rope was wrapped around the outside of this container for the purpose of holding a lid in place.

As evidence bearing upon the opportunity and motive of defendants to set the blaze, the prosecutor introduced the following facts: that the building was secured from the outside and there was no evidence of a breaking-in; that defendants were on the premises not long before the conflagration began; that it would have been easy for defendants to set the fire, although not physically present, by means of a timing device; that defendants owed three months rent; that they were indebted to the Michigan Department of Revenue for sales tax; that defendants owed $650 to the gas company; and that defendants carried $40,000 in fire insurance.

For their part, defendants sought to explain certain of the circumstantial evidence; namely, the piece of rope and the combustible liquid discovered following the fire by the fact that catering supplies required by their business were frequently delivered bound with rope or other wrappings; and that waste materials would naturally be discarded in refuse containers on the premises.

A defense expert witness, a polymer chemist,[4] attributed the discovery of flammable liquid at the

---

[4] A chemist particularly trained in the full synthetic chemical compounds.

scene of the fire to the melting of plastic wastebaskets, asphalt tile covering the floor, and rubber moulding around the baseboards of affected rooms. These materials, he testified, would decompose when subject to sufficient heat and yield a liquid with the properties of paint thinner, as opposed to the theory of the state.[5]

The weight and credibility to be accorded the testimony of the various expert witnesses was for the jury. We may not disturb it.

Next, defendants submit that they were denied a fair trial because the trial judge, it is alleged, made so-called "sarcastic" comments when ruling on an objection to one of the defendants' theories of the case.

We have studied the record in this regard with extreme care. It is a sensitive area of review. If, indeed, a trial judge manifests a partiality toward either party litigant, a potential for grave injustice arises. Yet, we cannot expect that a trial judge can totally repress every reaction to the conduct of a trial by counsel whose techniques may invite a reproof or at least cautionary comment. Mayhap, in the case at bar, certain of the trial judge's remarks might better have been left unsaid. Likewise, the form of certain of counsel's objections invited, if not required, rephrasing and clarification by the court. We think the trial judge made clear in his charge that no untoward inference should be drawn from his observations from the bench, and we may not conclude that the jury did not follow the admonition to resolve the issues within his carefully worded

---

[5] *Per contra,* the fire department chemist testified that common plastics and rubber products yield only traces of flammable liquids on decomposition (which could not be detected under the circumstances).

charge. We do not find this assignment of error to support reversal.

Finally defendants complain that the trial court committed reversible error by admitting a candle into evidence on the apparent theory that a similar candle might have served as a delayed timing device.

The prosecutor admitted that this candle had been taken from a box containing other unused candles in the office of the burned building and that it was of the type ordinarily found in catering establishments. The fire department chemist testified, over objection, that he had burned part of the candle to determine the burning time per inch in order to ascertain the length of time it would take for the candle to consume itself. The candle was allowed to remain as an exhibit throughout the prosecutor's case. It finally was ruled inadmissible, and the jury was so instructed. The initial error, if any, was cured.

On the basis of the whole record we conclude the defendants were accorded a fair trial in the constitutional sense. We find no reversible error. The conviction is affirmed.

All concurred.