PEOPLE v SMOCK
PEOPLE v GRISWOLD
PEOPLE v SORENSON
PEOPLE v PARSON
PEOPLE v MARVIN SMITH

Opinion of the Court

1. Criminal Law—Evidence—Trier of Fact—Reasonable Inferences.

The trier of fact in a criminal case may draw reasonable inferences from the direct and circumstantial evidence.

2. Arson—Opportunity—Conviction.

Mere opportunity to commit arson is not enough to support a conviction for arson.

3. Arson—Evidence—Trier of Fact—Inferences—Reasonable Doubt.

The trier of fact in an arson case may pile inference upon inference in reaching a guilty verdict as long as the cumulative effect of the evidence proves guilt beyond a reasonable doubt.

4. Arson—Elements—Aiding and Abetting.

The fact of a burning and the fact that a particular defendant caused the burning either by his own hand or by aiding and abetting must be established to constitute criminal arson.

References for Points in Headnotes
[1] 29 Am Jur 2d, Evidence §§ 10–12, 159–167.
[2, 3] 5 Am Jur 2d, Arson and Related Offenses § 47.
[4] 5 Am Jur 2d, Arson and Related Offenses §§ 5–15, 46.
[5] 5 Am Jur 2d, Arson and Related Offenses § 55.
[6] 21 Am Jur 2d, Criminal Law § 119.
[7] 5 Am Jur 2d, Arson and Related Offenses §§ 8, 10, 43, 45 note.
[8–10] 21 Am Jur 2d, Criminal Law §§ 127, 128.
[11] 30 Am Jur 2d, Evidence §§ 1125, 1126.
[12] 75 Am Jur 2d, Trial §§ 91–119.
Scope and application of rule which permits judge in criminal case to comment on weight or significance of evidence. 113 ALR 1308.

5. ARSON—MEMBERS OF GROUP—SPECIFIC IDENTIFICATION—EVIDENCE
—CONSPIRACY.

Denial of defendants' motion for a directed verdict, in a trial for arson of seven defendants who were part of a group of 100 to 120 trespassers present at the scene of the arson, was error where there was no specific identification of who committed the arson, the evidence was not sufficient to show each member of the group was guilty of arson, there was no evidence of a conspiracy, and there was no evidence to indicate a plan to commit arson.

DISSENT BY D. E. HOLBROOK, P. J.

6. CRIMINAL LAW—AIDING AND ABETTING—STATUTES.

*Every person concerned in the commission of an offense, who procures, counsels, aids, or abets in its commission may be prosecuted, indicted, tried and on conviction punished as if he had directly committed such offense (MCLA 767.39).*

7. ARSON—WORDS AND PHRASES—BURN—AIDING AND ABETTING—
STATUTES.

*The statutory definition of the word "burn" makes the aider or abetter of an arsonist himself an arsonist; a defendant may be convicted of arson without proving he actually set the fire (MCLA 750.71).*

8. CRIMINAL LAW—AIDING AND ABETTING—GUILT OF PRINCIPAL.

*The guilt of the principal must be shown in order to convict a defendant under an accessory theory; however, the principal need not necessarily be convicted.*

9. CRIMINAL LAW—GUILT BY ASSOCIATION.

*Mere association with others who are involved in a crime is not enough to implicate a defendant in the crime.*

10. CRIMINAL LAW—AIDING AND ABETTING—PRESENCE AT CRIME.

*There is no requirement that an aider or abettor must be able to see the commission of the crime; he may be constructively present.*

11. CRIMINAL LAW—CIRCUMSTANTIAL EVIDENCE—REASONABLE HY-
POTHESIS OF INNOCENCE.

*To justify the inference of guilt from circumstantial evidence, the facts proven from which it is asked that the guilt of the defendants be inferred must be consistent with each other and must not only clearly point to their guilt, but must be inconsist-*

ent with any other reasonable hypothesis upon which their
innocence may be maintained.

12. TRIAL—COMMENTS OF JUDGE—RELEVANCE.
    The thoughts and comments of the trial judge as to the evidence,
    once it has been established that the case is to go to the jury,
    are totally irrelevant both at trial and on appeal.

Appeal from Roscommon, Carl L. Horn, J. Submitted March 3, 1975, at Grand Rapids. (Docket Nos. 20082-86.) Decided August 26, 1975.

Robert H. Smock, Richard L. Griswold, Rodney R. Sorenson, Kenneth C. Parson, and Marvin P. Smith were convicted of arson. Defendants appeal. Reversed.

*Frank J. Kelley,* Attorney General, *Robert A. Derengoski,* Solicitor General, *Robert Hess,* Prosecuting Attorney, and the Prosecuting Attorneys Appellate Service, *Edward R. Wilson,* Director and *Lee W. Atkinson,* Special Assistant Attorney General, for the people.

*Benson, Sabin & Bloomquist, P. C.,* for defendants.

Before: D. E. HOLBROOK, P. J., and BRONSON and M. J. KELLY, JJ.

M. J. KELLY, J. The interesting question presented in this appeal is: to what extent may participants in an illegal trespass be found guilty of crimes committed by some of the trespassers absent specific identification. In this case 100 to 120 persons, more or less, participated in a trespass which resulted in vandalism, malicious destruction of private property and arson. These five appellants were among seven defendants arrested at the scene of the criminal activity, a school construc-

tion site in Roscommon County, and later convicted by a jury of two counts of arson.[1] Two defendants did not appeal.

Appellants admit that arson was committed but contend that there was no evidence connecting them to the arson and they cannot be found guilty by association. We are compelled to agree.

It is clear from the record that the defendants were picked up when the sheriff arrived at the site because of their obvious illegal trespass. By the time the sheriff arrived on the scene most of the other participants had departed. The defendants were apprehended as they attempted to scatter in different vehicles. They were all booked together and tried together on the charge of arson. There was no eyewitness testimony differentiating any of these defendants from any of the other trespassers at the scene. In other words, the theory of the prosecution was that these defendants and all of the illegal trespassers were accessories to the crime of arson and all were guilty of aiding, counseling, inducing, persuading or procuring another to do such act[2] and therefore were guilty as principals. In fact, the people argue that the situation is analogous to a conspiracy and that a conspiracy may be proven by circumstantial evidence, citing *People v Sobczak,* 344 Mich 465, 469; 73 NW2d 921 (1955). However the defendants in this case were not charged with conspiracy; they were charged with arson.

The evidence offered in support of the people's case, absent eyewitness testimony, was necessarily circumstantial. Of the five appellants there was absolutely no circumstantial evidence as to one (Smith) connecting him, his clothing, any smell or other item to the transaction except the testimony

[1] MCLA 750.73; MSA 28.268, MCLA 750.74; MSA 28.269.
[2] MCLA 750.71; MSA 28.266.

of a witness that he (Smith) was at the gate waving traffic on. Other witnesses testified that the fires could not even be seen from the gate. From the gate to the buildings it was about an eighth of a mile and trees blocked the view. Two of the defendants (Parsons and Sorenson) smelled of fuel oil when they were apprehended and when they were booked. One defendant's (Griswold's) fingerprints were found on two beer cans near a cut telephone wire. All five defendants were apprehended in automobiles at the scene. All save Smith were apprehended in a Plymouth station wagon as it was attempting to leave the compound. The sheriff's vehicle was pulled across the road blocking the exit-entrance of the site. This was the route that ran to Oakwood Avenue and the sheriff testified:

"*Q.* Did you see any other cars?
"*A.* Yes. I seen numerous cars out on Oakwood Avenue."

Defendant Smith was apprehended at the same place at the wheel of another vehicle. There were two others in that car who were not arrested:

"*Q.* And is there any reason at this time why only one of the three men was arrested?
"*A. (By the sheriff.)* Well, Butler advised us that the driver was the only one that had gotten out of the car at the site."

Both parties agree that the test in this situation is whether reasonable inferences have been drawn from the direct and circumstantial evidence, *People v Spann,* 3 Mich App 444; 142 NW2d 887

(1966), *lv den,* 378 Mich 744 (1966), *People v Boynton,* 46 Mich App 748; 208 NW2d 523 (1973).

The defendants rely on *People v Davenport,* 39 Mich App 252; 197 NW2d 521 (1972), urging that not only must the prosecutor negate any theory of innocence that would explain these facts, but that any inferences drawn must follow as a compelling certainty from the circumstantial evidence. The people's testimony showed that the defendants were dressed as construction workers. On cross-examination the witnesses conceded that the aroma of fuel oil stated to be on two of the defendants could have come from the construction work which the defendants were engaged in. Furthermore, it was likewise brought out on cross-examination that the aroma of fuel oil could have stuck to the clothing and persons of these defendants from merely being in the vicinity of uncovered fuel oil. This fuel oil aroma is the strongest evidence that the prosecution presented and it applied to only two of these five defendants. As we have said, there was no evidence regarding Smith other than his mere presence. As to one of the other defendants the nexus was fingerprints on two beer cans.

We believe that the jurors may have convicted because they found that the evidence showed the defendants had the opportunity to commit the arson. Mere opportunity is not enough. *People v Besonen,* 4 Mich App 131; 144 NW2d 653 (1966).

In the leading arson circumstantial evidence case dealt with by this Court, we held that inference could be piled upon inference so long as the cumulative effect of the evidence proved guilt beyond a reasonable doubt. *People v Horowitz,* 37 Mich App 151, 194 NW2d 375 (1971), *lv den,* 387 Mich 753 (1972), relying on *Dirring v United States,* 328 F2d 512 (CA 1, 1964), *cert den,* 377 US

1003; 84 S Ct 1939; 12 L Ed 2d 1052 (1964), *reh den,* 379 US 874; 85 S Ct 27; 13 L Ed 2d 83 (1964).

To constitute criminal arson in Michigan both the fact of burning and the fact that the particular defendant caused the burning either by his own hand or by aiding and abetting must be established. MCLA 750.71; MSA 28.266, MCLA 750.72; MSA 28.267, MCLA 750.74; MSA 28.269; *People v Rabin,* 317 Mich 654; 27 NW2d 126 (1947).

In this case from 100–120 persons were at the scene as conceded by the people. Statistically, if there were seven or eight fires, depending upon how many participants to each fire, there would seem somewhat less of a possibility that these defendants each aided and abetted or participated in setting a fire than otherwise. We are constrained to believe that either the evidence is sufficient to show each member of the group of 100 to 120 persons guilty of the arson, or the circumstantial evidence linking these defendants to the setting of the fires or the aiding and abetting of the setting of the fires, has broken links in the chain. There is no evidence of a conspiracy; there is no evidence to indicate a plan on the part of the group to commit arson; while the evidence shows ample opportunity, that is not enough to convict. The defendants moved for a directed verdict at the close of the people's case and the trial court made the following observations:

"*The Court:* The Court has heard the arguments of counsel with respect to their motions.

"I might say, in my short term as judge, this is probably one of the weakest cases I have heard, but the prosecutor has had a lot of problems with this case.

"I am going to say that I am going to deny the motions, but I am saying for the record that perhaps I am wrong there and I don't want you to feel that I am

passing the buck, that I don't want to make a decision, but I do feel that this is a matter for the jury.

"I think Mr. Barris' points are very good and that this is a borderline case and that the Court has got to grant a motion for a directed verdict.

"I might say to the defendants, Mr. Smith particularly, the proofs are such that I am real close to granting the motion for a directed verdict, but I am not going to do that. You also heard the testimony here.

"I believe the testimony of one witness, Michael Butler, is enough to send this case to the jury.

"It is the ruling of the Court that the motions are denied by the Court as to all defendants which now brings us to the defense of this case.

"Shall we call the jury back?"

Michael Butler was the people's chief witness. He lived approximately 120 feet from the entrance driveway to the construction site. When he saw an abnormal number of cars going into the construction site he called the sheriff's department by phone and "notified them there might be something happening or some disturbance". He continued to observe from his house and his observations were as to occurrences at the gate or entrance way into the construction compound. His testimony went to the identification of persons present at the scene but it was a physical impossibility for his observations to extend to the various fires. After the fires had been started, he could see smoke, but he was a long distance from the actual burning and the view was blocked.

In his opening statement the prosecutor said:

"It is not a clear case because of circumstantial evidence. We will have four or five people that were inside this site and it all points to the defendants and say that these men lighted the match to burn these particular articles."

If the prosecutor had such testimony in mind during his opening statement, he was unable to produce it at trial.

We believe that the trial court's expressed apprehensions were correct and that under the circumstances a directed verdict of not guilty based upon the proofs adduced at trial should have been granted. We therefore reverse and remand for entry of a directed verdict of not guilty of the charge of arson.

BRONSON, J., concurred.

D. E. HOLBROOK, P. J. *(dissenting)*. This writer respectfully disagrees with the majority opinion in this case, because this writer believes certain issues have been improperly framed and improperly answered, and because certain unwarranted findings of fact have been made for the first time on this appeal.

Certain facts, left out of the majority opinion, should be added. On the afternoon of February 17, 1974 three men were leaving the construction site of the high school near the Village of Roscommon, Michigan. One of the men, a Mr. McDonald, had had some work to attend to at the site and had been accompanied there by his son and a friend. As they left the site, Mr. McDonald's son stopped the automobile and got out to secure a cable across the driveway into the site. At this time, a caravan of approximately 20 to 30 cars arrived on the scene. A man from one of the cars approached Mr. McDonald's son and demanded the lock for the cable. This man took the lock and threw it away in a snow bank. When Mr. McDonald began to exit from the car he was threatened by some of the individuals present. By that time there were apparently at least three persons (other than the

occupants of the McDonald car) standing at the
site. A blue station wagon was blocking the Mc-
Donald car's exit from the site. Two men who
exited from this car were later identified by Mr.
McDonald as defendants Smock and Sorenson. An
unidentified individual demanded the keys from
the McDonald car, and when they were not imme-
diately forthcoming either Smock or Sorenson be-
gan letting the air out of McDonald's tires. At this
point the caravan of cars was directed into the
construction site by a man who was later identified
as defendant Smith. The caravan of cars entered
the construction site, and at least some of the
occupants of the cars committed actual physical
acts of vandalism and arson. At least eight sepa-
rate fires were set and some buildings, some con-
struction equipment and a trailer were destroyed.
The items of property that were destroyed were
not visible from the entrance way to the site, but
the fires and the smoke were visible. These events
had been witnessed by a neighboring landowner
who notified the Roscommon County Sheriff's De-
partment. When the sheriff arrived, he immedi-
ately blocked the exit from the construction site,
but most of the vehicles had already left. As a
result of this blockade, the Bradley brothers were
arrested as they attempted to leave the scene in a
pickup truck. They are not parties to this appeal.
Also as a result of the blockade, defendants
Smock, Griswold, Sorenson and Parson were ar-
rested as they attempted to leave the scene in a
blue Plymouth station wagon. Defendant Smith
was arrested at the gate upon being identified by
an eyewitness as the person who had directed
traffic into the site. Smith explained his presence
at the site by saying that he was going fishing.
Defendant Griswold's fingerprints were found on a
beer can which was found inside the construction

site. The smell of fuel oil was detected on defendants Sorenson and Parson, and there was testimony that fuel oil had been used in starting the fires.

Only one witness attempted to testify as to the actual number of people who had entered the construction site. He did so under the following questioning by Mr. Barris, one of the defense attorneys:

"*Q.* Now, sir, could you advise me as to whether or not some of these twenty automobiles which you described as having approached the site caravan style had more than one occupant over and above the driver?

"*A.* Many of the vehicles did.

"*Q.* Did you observe how many vehicles had more than one occupant?

"*A.* No, sir.

"*Q.* Is it your best estimate today that there were at least twenty automobiles in the caravan?

"*A.* At least twenty, yes, sir.

"*Q.* Did you actually count these automobiles or is it merely an estimate?

"*A.* I stopped over ten.

"*Q.* That, sir, is not responsive.

"*A.* No, I didn't count all the vehicles, sir. I am sorry.

"*Q.* Could there have been, based upon that statement, thirty automobiles?

"*A.* The only thing I could say is that there were over twenty.

"*Q.* Could there have been thirty?

"*A.* There could have been. I didn't count all the vehicles entering.

"*Q.* Would you say that some of these vehicles, whether it be twenty or thirty—I recognize that you were not counting them one by one—could have contained, through your various observations, as many as four or five people?

"*A.* Some of the cars that went in, yes. Some contained more than one and some contained four or five.

"*Q.* All right. Is it a fair statement to say then that if one were to add up all of the drivers and all of the occupants that you observed that it could be somewhere in the area of forty to perhaps a hundred people who were involved in this caravan? Again, I recognize you had no opportunity to specifically count each and every one individually.

"*A.* It would be a fair statement to say there were over forty.

"*Q. Are you prepared to state that there were or there could have been up to one hundred individuals altogether?*

"*A. That is something that is beyond reason. It is unlikely.*

"*Q.* I recognize that you cannot testify honestly to a maximum figure, but at this time there might be some way to estimate the amount of individuals in this caravan?

"*A.* No, sir.

"*Q. But in any event, you are satisfied that there were at least forty, as a minimum; is that not true?*

"*A. I think that would be a fair assumption.*" (Emphasis supplied.)

On another day of the trial, after the defense had made a motion for a directed verdict the prosecutor Mr. Hess in answering said this:

"I think your Honor has heard ample and crystal clear testimony that the seven defendants had opportunity to commit a criminal arson. There is ample testimony to establish that there was *twenty or thirty cars which contained five people per car entering the construction site for a common purpose and that they entered caravan style.* There is testimony that there was more than ordinary amount of activity and a man was directing traffic by the gate. Several men had been detained as they were exiting from the site at the gate. When the cars left, they were let go.

"The fact that there may be more guilty persons than

the seven that were apprehended, certainly does not make the seven men innocent." (Emphasis supplied.)

This hasty summary by the prosecutor is certainly not evidence in the case. It is certainly not a concession by him that there were somewhere between 100 and 120 people present when his own witness testified that the most he would safely say were present was 40 people. In spite of the fact that the jury would have had every right in finding that there were only 40 people at the construction site, the majority finds that "in this case 100 to 120 persons, more or less, participated in a trespass which resulted in vandalism, malicious destruction of private property and arson".

The majority feels compelled to agree with defendants when they state that they cannot be found guilty by association. Certainly, no one would argue with that legal proposition. As a matter of fact, the trial judge was certainly aware of it when he instructed the jury thusly: *"I want to further advise you that you are instructed that mere presence at the scene of an alleged crime is not sufficient to convict these defendants of committing any criminal offense."* (Emphasis supplied.) The above quote shows beyond a doubt that the trial judge was aware of the correct law and that he correctly instructed the jury. The jury nevertheless found the defendants guilty. We cannot assume that the jury acted contrary to such a crystal clear instruction. There was evidence other than mere presence which the jury evidently believed. The majority also states that "the defendants were apprehended as they attempted to scatter in different vehicles". Such a statement is simply not supported by the evidence in the transcript. While the statement made by the majority depicts a scene of great confusion with random

arrests being made on a catch-as-catch-can basis,
that does not in any way describe events as they
occurred. In fact, defendants Smock, Griswold,
Sorenson and Parson were arrested a full 10 to 15
minutes after the sheriff and his deputy had ar-
rived and blocked off the exit to the construction
site. This could hardly be termed "scattering". The
majority then states that it was the prosecution's
theory that these defendants and all the other
trespassers were accessories to the crime of arson.
While the prosecutor has never advanced that
theory, and indeed has no need to since only seven
defendants were on trial, it is certainly not beyond
the realm of possibility. The statute defining arson
and defining aiding and abetting (cited by the
majority) does not end with "unless the crime is
committed by more than 50 individuals" or "un-
less the crime is committed by more than 100
individuals, in which case the act will not consti-
tute a crime".

Turning now to the specific defendants, it seems
that the majority believes defendant Smith to be
absolutely blameless. In fact, the case against him
is very strong indeed. MCLA 767.39; MSA 28.979,
provides:

"Every person concerned in the commission of an
offense, whether he directly commits the act constitut-
ing the offense or procures, counsels, aids, or abets in
its commission may hereafter be prosecuted, indicted,
tried and on conviction shall be punished as if he had
directly committed such offense."

While the above-quoted statute would be sufficient
to convict Smith of arson without proving he
actually set the fire, the statutory "definition of
'burn' ", MCLA 750.71; MSA 28.266, further pro-
vides: "The term 'burn' as used in this chapter

shall mean setting fire to, or doing any act which results in the starting of a fire, or aiding, counseling, inducing, persuading or procuring another to do such act or acts." This statutory definition of the word "burn" makes the aider or abettor of an arsonist himself an arsonist without reliance on the general statute. The question therefore was not, as the majority seems to think, whether or not defendant Smith actually struck a match and lit a fire. The question was whether or not he was an arsonist as defined by the Michigan statutes on point. A properly instructed jury found that he was.

Since the "aiding and abetting" theory is inherent in the arson statute, the charge against Smith did not fail simply because of a lack of evidence linking him to the actual setting of the fires. It is true that to convict a defendant under an accessory theory, the guilt of the principal must be shown. *People v Williams #1,* 45 Mich App 623; 207 NW2d 176 (1973). Of course, this does not mean that the principal need necessarily be convicted. *People v Smith,* 271 Mich 553; 260 NW 911 (1935), *People v McGuire,* 39 Mich App 308; 197 NW2d 469 (1972), *People v Sharon Brown,* 35 Mich App 330; 192 NW2d 671 (1971). In this case there is no doubt that an arson was committed. The parties have so agreed. Therefore, there must somewhere be a guilty principal. Of course, as the jury was properly instructed, mere association alone is not enough to implicate individuals with others involved in a crime. *People v Fields,* 49 Mich App 652; 212 NW2d 612 (1973). The evidence against Smith, however, indicates more than a "mere association". There was testimony that defendant Smith had something to do with preventing the McDonald's car from leaving the site and

there is ample testimony that defendant Smith
directed the other cars into the construction site
where their occupants perpetrated the arson. The
majority states that from the entrance way to the
construction site, the actual buildings, trailer, and
equipment which were subsequently burned could
not be seen by defendant Smith. Actually, there
was testimony that the flames and smoke could be
seen from a very great distance indeed. The fact is,
there is no requirement that an aider or abettor be
able to actually see the commission of the crime.
He may be constructively present. *People v Horo-
witz,* 37 Mich App 151; 194 NW2d 375 (1971),
*People v Poplar,* 20 Mich App 132; 173 NW2d 732
(1969).

The majority's reliance on *People v Davenport,*
39 Mich App 252; 197 NW2d 521 (1972), is mis-
placed. The *Davenport* case concerned possession
of heroin. That case held that a defendant could
not be convicted of possession of heroin when he
was arrested on the second floor of a dwelling and
heroin was found in the basement of the dwelling,
especially where the basement was shared with
several other individuals. In *Davenport* the defend-
ant was within the house as of right. It was where
he lived. The fact that he was rightfully in one
part of the house and that heroin was found in
another part of the house which was under the
common control of several individuals was held
not sufficient to convict him of possession of her-
oin. It was equally conceivable that any of the
occupants of the house may have possessed the
heroin in question. In this case, however, none of
the defendants had any right whatsoever to be at
the site where the arson took place. If there is
some theory that is consistent with their inno-
cence, it is so far unknown. Unlike defendant

Smith, they did not all claim that they were going fishing. At any rate, *Davenport* is no authority for the proposition that the prosecutor must himself conjure up every possible theory consistent with the innocence of the defendants, ridiculous or otherwise, and then proceed to rebut it himself. If there is some theory consistent with innocence which would explain why defendants Smock, Griswold, Sorenson and Parson saw fit to trespass in order to be present at the scene of a serious crime, then it would seem to be the duty of the defendants to make that theory known. Of course, in this case the prosecutor did not advance any theory which would indicate that the defendants were innocent. The defendants themselves were unable to advance any such theory. However, the jury must have felt that the evidence produced by the prosecutor not only indicated the guilt of the defendants, but was inconsistent with any other reasonable hypothesis upon which their innocence could have been maintained. This must be so because they returned a verdict of guilty after the following instruction:

"To justify the inference of guilt from circumstantial evidence, the facts proven from which it is asked that the guilt of the defendants be inferred must be consistent with each other and must not only clearly point to their guilt, but must be inconsistent with any other reasonable hypothesis upon which their innocence may be maintained."

It is apparent therefore that the proper law was applied and that the jury found that the evidence adduced was inconsistent with any reasonable hypothesis of innocence. Such a finding on the part of the trier of facts should not be ignored upon review. Especially where, as here, the jury's fail-

ure to make exactly such a finding is alleged as error. Simply put, the jury evidently rejected all hypotheses of innocence including the claim that all construction workers smelled like fuel oil.

The majority states that since there were 100 to 120 persons at the scene and only seven or eight fires, that it seems unlikely that each of the persons at the scene participated in the setting of the fires. Of course, this constitutes a finding of fact by the majority that there were 100 to 120 persons at the scene in the absence of any testimony whatsoever to that effect. But further, it is not correct logic to assume that there has to be some automatic limitation on the number of either participants or aiders and abettors to a crime. If the theory of the majority were true, then criminals could truly find safety in numbers. Even if there were 100 or 120 or more persons at the scene of the crime, if they all participated or aided or abetted in the setting of a fire then they are all guilty of arson. It makes no difference if there was one fire or 100 fires or if there were two parties to the crime or 120 or more parties to the crime. The majority says that somehow the actual number of the persons present at the scene has caused "broken links in the chain". The majority does not however point out just what those broken links are. Finally, it is again relevant to note that we do not have 100 or 120 defendants on trial. There is no need to conclude that either all of the persons present at the scene are guilty or that none of the people present at the scene are guilty. The prosecution had no opportunity to prove the guilt of the entire mass of people who had been present. Most of them did not remain to discuss theories of group innocence after the fires had been set. Certainly the fact that it cannot be proven that the majority

of the group was guilty is not in itself proof of these particular defendants' innocence.

Finally, the majority quotes the trial judge as saying that he thought the prosecutor had a very weak case. This statement was made by the trial court just before he denied defendants' motions for directed verdict. He followed it quickly with a statement that he believed the testimony of one of the witnesses was enough to send the case to the jury. If anything, the statement by the judge was an erroneous interjection of his own belief of the facts. He did, however, concede that there was enough evidence which, if believed by the jury, was sufficient to convict the defendants.

At any rate, the thoughts of the trial judge as to the evidence, once it had been established that the case was to go to the jury, were totally irrelevant both at the trial and on this appeal. The majority opinion ends with this quote from the opening statement of the prosecutor: "It is not a clear case because of circumstantial evidence. We will have four or five people that were inside this site and it all points to the defendants and say that these men lighted the match to burn these particular articles." The majority then questions why the prosecutor never produced such evidence. The answer, as we have seen, is that he never had to produce such evidence. He simply did not have to prove, under the statute, that any of the defendants had actually "lighted the match". Perhaps the prosecutor overstated his case in his opening statement. That is certainly not grounds for reversal.

Being convinced that there are no grounds for reversal in this case, I vote to affirm.