Walter **BAGNICK**, Petitioner–Appellant,

v.

**MICHIGAN DEPARTMENT OF CORRECTIONS**, Respondent–Appellee.

No. 00–1297.

United States Court of Appeals, Sixth Circuit.

April 24, 2002.

Before SILER and CLAY, Circuit

Judges, and GRAHAM,* District Judge.

GRAHAM, District Judge.

This is an appeal from the denial of a petition for writ of habeas corpus filed pursuant to 28 U.S.C. § 2254. Petitioner–Appellant Walter Bagnick was convicted by a jury in the Recorder's Court for the City of Detroit, Michigan on one count of burning real property, in violation of Mich. Comp. Laws § 750.73, and one count of burning insured property, in violation of Mich. Comp. Laws § 750.75. On April 7, 1995, petitioner was sentenced to a term of probation. Since both counts concerned a single fire which occurred at Frankie's Place, a tavern owned by petitioner which was located in Ecorse, Michigan, on Easter Sunday, April 11, 1993, petitioner was sentenced solely on the charge of burning insured property.

Petitioner pursued a direct appeal from his conviction to the Michigan Court of Appeals, challenging the sufficiency of the evidence to support his conviction. The state appeals court affirmed petitioner's conviction in an unpublished opinion issued on October 4, 1996. The Michigan Supreme Court denied petitioner's application for leave to appeal on June 30, 1997.

On November 25, 1997, petitioner filed a petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254 in the United States District Court for the Eastern District of Michigan. The sole claim in the petition concerned the sufficiency of the evidence to support petitioner's conviction. On February 4, 2000, the magistrate judge assigned to the case submitted a report recommending that the writ be denied. Petitioner filed objections to the report and recommendation on February 9, 2000. The district court accepted the report and

recommendation by order entered on February 29, 2000 and entered a judgment denying the petition and dismissing the case. Petitioner filed a notice of appeal to this court on March 13, 2000.

■ This court reviews *de novo* the legal conclusions involved in the district court's decision to deny the writ, and reviews for clear error its findings of fact. *See Lucas v. O'Dea,* 179 F.3d 412, 416 (6th Cir.1999). The provisions of the Antiterrorism and Effective Death Penalty Act ("AEDPA"), which became effective prior to the filing of the instant petition, apply to this case. *See Lindh v. Murphy,* 521 U.S. 320, 336, 117 S.Ct. 2059, 138 L.Ed.2d 481 (1997). Under the AEDPA, a writ of habeas corpus shall not issue unless the state court adjudication "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States," 28 U.S.C. § 2254(d)(1), or was based on "an unreasonable determination of the facts in light of the evidence presented in the State court proceeding," 28 U.S.C. § 2254(d)(2).

A state court decision is "contrary to" Supreme Court precedent if the state court arrived at a conclusion opposite to that reached by the Supreme Court on a question of law or if the state court decided a case differently than the Supreme Court did on a set of materially indistinguishable facts. *Williams v. Taylor,* 529 U.S. 362, 413, 120 S.Ct. 1495, 146 L.Ed.2d 389 (2000). A state court decision involves an unreasonable application of Supreme Court precedent if the state court identifies the correct legal principle from the decisions of the Supreme Court but unreasonably applies that principle to the facts

---

* The Honorable James L. Graham, United States District Judge for the Southern District of Ohio, sitting by designation.

of the petitioner's case. *Id.* A federal habeas court may not find a state adjudication to be "unreasonable" simply because the court concludes in its independent judgment that the relevant state court decision applied clearly established federal law erroneously or incorrectly. *Id.* at 411, 120 S.Ct. 1495.

The standard in a habeas case for determining the sufficiency of the evidence to support a conviction is found in *Jackson v. Virginia,* 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979). Under *Jackson,* federal habeas corpus relief can be granted "if it is found that upon the record evidence adduced at the trial no rational trier of fact could have found proof of guilt beyond a reasonable doubt." *Id.* at 324, 99 S.Ct. 2781. In analyzing the sufficiency of the evidence, "the relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Id.* at 319, 99 S.Ct. 2781. The *Jackson* rule applies regardless of whether the evidence is direct or circumstantial, *see Spalla v. Foltz,* 788 F.2d 400, 402 (6th Cir.1986), and it is not necessary for the evidence to exclude every reasonable hypothesis except that of guilt. *Holland v. United States,* 348 U.S. 121, 140, 75 S.Ct. 127, 99 L.Ed. 150 (1954); *United States v. Beddow,* 957 F.2d 1330, 1334 (6th Cir.1992).

Although the Michigan Court of Appeals did not specifically cite to *Jackson,* that court applied the *Jackson* standard in considering the sufficiency of the evidence to support petitioner's conviction. The question presented by this appeal is whether the state court decision involved an unreasonable application of the *Jackson* standard.

Petitioner was sentenced for the offense of burning insured property under Mich. Comp. Laws § 750.75, which provides:

> Any person who shall wilfully burn any building or personal property which shall be at the time insured against loss or damage by fire with intent to injure and defraud the insurer, whether such person be the owner of the property or not, shall be guilty of a felony, punishable by imprisonment in the state prison not more than 10 years.

This offense requires proof of: (1) the burning; (2) of real or personal property; (3) which is insured at the time against loss or damage caused by fire; and (4) that the perpetrator acted with an intent to defraud the insurer. Petitioner does not contest that there was a fire at Frankie's Place or that the fire was deliberately set as opposed to being accidental. Rather, petitioner argues that the evidence was insufficient to identify him as the perpetrator of the offense or to establish that he started the fire to defraud the insurer.

Under Michigan law, circumstantial evidence, including evidence of motive and opportunity, may be considered in an arson case. In *People v. Horowitz,* 37 Mich.App. 151, 154, 194 N.W.2d 375, 376 (1971), the court noted evidence that the defendants had the opportunity and the motive to set the fire, and commented that due to the usually surreptitious nature of the offense of arson, "proofs will normally be circumstantial." *See also People v. Nowack,* 462 Mich. 392, 402–403, 614 N.W.2d 78 (2000)(evidence of arson usually circumstantial); *People v. Porter,* 269 Mich. 284, 292, 257 N.W. 705, 708 (1934)("The crime of arson is so peculiarly one of secrecy that often the only evidence of the unlawful character of the fire is found in the acts and admissions of a person having opportunity and motive."). Under Michigan law, evidence tending to show motive and op-

portunity and negating accidental cause is sufficient to establish the elements of the offense. *People v. Bailey*, 42 Mich.App. 359, 363, 202 N.W.2d 557, 559 (1972).

The state appeals court concluded that the circumstantial evidence in petitioner's case was sufficient to sustain his conviction. That evidence included the fact that five days prior to the fire, petitioner received notice that the insurance policy that covered Frankie's Place was due to expire on a date less than a month after the fire and would not be renewed. A total loss would have resulted in an insurance payment of over $200,000, and that even after payment of the remainder due on the land contract for the purchase of the bar, petitioner would have netted at least $100,000 of that insurance payment. Petitioner's operating expenses exceeded the profits from the bar. Petitioner's employer offered him a $50,000 buyout or a transfer to Florida. The buyout offer included his home but did not include the bar. Petitioner had unsuccessfully tried to sell the bar during the previous year.

There was testimony that petitioner and his sister were the only persons who had keys to the upstairs area where the fire was started. When the fire was discovered, petitioner was at the Happy Hour Bar. He had been at the Happy Hour about five or ten minutes when he was notified about the fire at Frankie's Place. The Happy Hour Bar was a one-minute drive away from Frankie's Place. The fire at Frankie's Place burned approximately eight to twelve minutes before it was extinguished. Therefore, it was reasonable for the trier of fact to conclude that petitioner could have set the fire and driven to the Happy Hour Bar.

There was testimony that when the firefighters arrived at Frankie's Place, they had to pry open the outside door which was the only lower level means of entry to the upstairs area above Frankie's Place because that door was locked. The three fires set in the upper level were started with accelerants such as gasoline, cardboard, rags and paper napkins. The record also includes testimony that on the day following the fire, petitioner was questioned by the fire chief, and during the course of that interview, a newspaper, about one to one-and-a-half weeks old, fell out of petitioner's pocket. This newspaper included an article about another bar owner from a nearby city who had been acquitted of setting his bar on fire. Petitioner became excited and irritated when informed that the fire was not caused by an electrical problem.

Petitioner presented evidence that other persons had an opportunity or motive to set the fire. He claims that Iola Havens, a cook at the bar had a key to the upstairs, and that her son became irate when petitioner laid her off. There was testimony that a patron who had been banned from the bar had threatened to damage the bar. Petitioner presented evidence that the former owner of the bar left keys hanging in the bar which some unknown person could have taken. There was evidence that the door did not fit well in the frame and had no deadbolt lock. Petitioner hypothesizes that the door may have been left ajar, or that entry could have been achieved through one of the upstairs windows. Petitioner also suggests that the fire could have been the work of an arsonist who was responsible for more than 125 fires in Ecorse. Witnesses who were at the Happy Hour Bar testified that they did not notice an odor of gasoline about petitioner's person the night of the fire.

However, the jury was not required to find that the prosecution's evidence excluded every reasonable hypothesis except that of guilt, and was free to determine the credibility of the witnesses and the weight

to be given the evidence presented. Viewed in the light most favorable to the prosecution, the evidence at trial was sufficient under Michigan law to establish the elements of the crime. The state court's application of the *Jackson* standard was not an unreasonable application of federal law or an unreasonable determination of facts in light of the evidence presented.

Accordingly, we conclude that the district court properly denied the petition for habeas corpus relief, and the district court's judgment dismissing the petition is hereby AFFIRMED.